## DOE EX DEM. SHELTON vs. CARROL ET ALS.

1. The widow is entitled under the statute (Clay's Dig. 173, § 7) to re-
tain possession of the dwelling-house in which her husband most usu-
ally dwelt next before his death, free from molestation and rent, until
dower is assigned her, and may successfully defend an action of eject-
ment instituted against her by the alienee of the husband.
2. Where the widow is in possession of the dwelling-house in which her
husband most usually dwelt next before his death, it is not her duty,
but the duty of him who is entitled to the fee, to become the actor in
procuring the assignment of her dower.
3. The marriage of the widow does not work a forfeiture of her right
to retain possession of the dwelling-house in which her husband most
usually dwelt next before his death, until dower is assigned her.
4. An alienee of a deceased husband may resort to a Court of Equity to
have dower in the premises allotted to the widow.
5. The gratuitous payment of rent by one in possession of real estate
does not estop him from showing the true character in which he holds
the premises.

Error to the Circuit Court of Mobile. Tried before the
Hon. John Bragg, Circuit Judge.

The facts of this case are fully stated in the opinion of the
court.

C. W. RAPIER, for plaintiffs in error:

1. It is well established by authority, that a mere dower in-
terest in land, unconnected with or unsupported by the privi-
lege of quarantine, is no defence to an action of ejectment.—
See 4 Kent's Com. 61; Jackson v. O'Donaghy, 7 Johns. 247;
Moore v. Gilliam, 5 Munf. 346; Chapman v. Armistead, 4
Munf. 382; Jackson v. Van, 17 Johns. 167; Sigler v. Van
Ripel, 10 Wend. 414; 9 Mass. 13.

2. Under the English law, the widow's quarantine was a privilege restricted to the possession of the capital mansion of her deceased husband, and in the duration of its enjoyment limited to forty days. Under our statute, the privilege is of the same character, but enlarged. Here the widow may retain possession for an indefinite period of time, until dower shall be assigned her. (Clay's Dig. 173, § 7.) But under the English law, if the widow married within the forty days, her privilege ceased. The language of the act in *magna charta, vidua maneat,* was construed to imply the condition of widowhood as essential to the feme's right of quarantine. See Bacon's Abr. 2d vol. 361; Thomas' Coke, 1st vol. 674; Law Lib. vol. 32, 234; 1 Lomax, 91. The rule for such a construction equally applies to our statute. The statute of Virginia on this subject is very like the statute of Alabama, and the statute of that State is construed to imply equally with the English law the continuance of the state of widowhood as essential to the feme's right. See Lomax, vol. 1, 91.

3. By the acknowledgment of a tenancy on the part of the defendants, and the payment of rent, the privilege of quarantine was waived. The privilege, if not terminated by the event of marriage, was in the nature of a chattel interest, and fell under the control of the husband. The husband could have removed his wife to another residence, and that would have put an end to the quarantine; for under the English law, if the widow left the capital mansion of her deceased husband, that destroyed her privilege. See Law Lib. vol. 32, 234.— The privilege being of such character, the husband, or husband and wife, could waive it, and the payment of rent was an expression of waiver.

4. The statute contemplates that the widow shall apply within a reasonable time for the assignment of her dower; otherwise, she being the proper person to apply for her dower, she could at will, in every instance, remain for life in the possession of the capital mansion of her deceased husband. The statute could not have contemplated that she might have at her option such an estate. And such seems to have been the view taken of a like statute in Tennessee. See Holman's Dig. 238, and the case referred to.

K. B. SEWALL, contra:

1. A widow has a right to the possession of the last residence of her deceased husband till dower is assigned her, and such possession is a bar to an action of ejectment. Clay's D. 173, § 7; 4 Kent's Com. 62; Doe v. Dodd, 1 Hals. 367.; Inge v. Murphy, 14 Ala. 289, and cases therein cited; Robinson v. Miller, 1 B. Monroe, 88; Grimes v. Wilson, 4 Blackf. 332; Singleton's Heirs v. Singleton's Exr's, 5 Dana, 92.

2. The widow's *marriage* does not defeat or abridge her rights; she claims under the statute, and not by common law. See cases above cited, and Coulter v. Holland, 2 Harv. Rep. 330, 334. There is no exception or restriction in the act, and it cannot be assumed that the Legislature intended that the right should be confined to the state of widowhood. The argument, from the force of the term *vidua, ex vi termini*, if carried out, would wholly deprive the widow of any right to dower. And the other ground assumed as the reason for the forfeiture applies equally to a departure from the house as to the marriage. Now, a departure from the last residence has been held not to forfeit the widow's right. Inge v. Murphy, 14 Ala. 289.

3. The assignment of dower ought to be made by the heir, or the person entitled to the freehold. 2 Crabb's Real Pr. 92, § 1141; ib. p. 99, § 1159; 4 Kent, 62, 63; Stevens' Heirs v. Stevens, 3 Dana, 372. The act giving the widow a *summary remedy* for the assignment of dower was for her benefit, and does not impair the right of the heir or purchaser to assign dower at common law. This was held in Virginia, where a similar statute prevails. Moore & Wife v. Waller et al. 2 Rand. 421.

4. That a purchaser claiming under a deceased husband may go into equity for assignment of dower, is shown by the case of Wiseley v. Findleay et al., 3 Rand. 371.

5. The second husband's paying rent had no effect on his wife's rights; if he had conveyed to Shelton, it would not defeat her rights. Smith v. White, 1 B. Mon. 20.

CHILTON, J.—This was an action of ejectment, brought by the plaintiff in error against the defendant, Carrol, as tenant in possession of certain land described in the pleadings,—

Upon the trial in the court below, a bill of exceptions was sealed by the presiding judge, from which it appears that J. C. Synott and his wife were admitted to defend, and they entered into the usual consent rule as tenants in possession. The plaintiff having made out a title to the premises as the alienee of one James Hansford, the land having been sold under a mortgage made by said Hansford, it was proved that after the plaintiff acquired the title to the premises, said Hansford, who continued to occupy them, paid him rent for the same up to the time of his death, which happened in the autumn of 1843; that some time after said Hansford's death, his widow, who still remained in the possession of the land, intermarried with Synott, who also went into possession in right of his wife; and that said Synott, after the marriage, agreed to pay rent to the plaintiff at the rate of eight dollars per month, and did pay that sum for two or three months, but afterwards refused to pay the same. It was also made to appear that the defendant, Eliza Synott, late the widow of said James Hansford, was the lawful wife of said Hansford while he was seized of said land, and so continued up to the time of his death; that he left no children; that said widow married the present defendant in 1844. She had never released her right of dower in the premises, which included the mansion house, &c. where her said late husband dwelt next before his death.

The Circuit Judge instructed the jury, that "the widow was entitled to dower in the lands of which her husband died seized and possessed, and that if they believed she was in the possession of the dwelling house in which her husband most usually dwelt next before his death, that she was entitled to retain possession thereof, and of the whole lot on which it stood, free from molestation or rent, until dower was assigned her; and that if there was no evidence that she had relinquished her right of dower in the premises, and was rightfully in possession, the plaintiff could not recover in this action.— To this charge the plaintiff excepted, and now assigns the same in this court for error.

The statute under which the defendants hold, is in these words: "It shall be lawful for the widow to retain the full possession of the dwelling house in which her husband most usually dwelt, next before his death, together with the out houses,

offices or improvements, and plantation thereunto belonging, free from molestation and rent, until she shall have her dower assigned her." Clay's Dig. 173, § 7. It is insisted by the counsel for the plaintiff, that this statute does not confer upon the widow such an interest as will enable her to defend against an ejectment brought by the husband's alienee. This construction cannot be supported. The object of the statute was to protect the widow in the enjoyment of the homestead and the rents and profits accruing therefrom, until her dower was assigned, and to make it incumbent on those entitled to the fee, whether they be the heirs at law or purchasers, if they desired to obtain possession of the portion to which they were entitled in the real estate, to become themselves the actors to have the widow's dower assigned her. If they remain inactive and acquiesce in her possession, she is not subject to the payment of rent, nor to molestation. Until her dower is assigned, she holds the premises for an indefinite period, and may rent them out and appropriate the proceeds to her own use. Such has been the construction of this statute by this court, (see Murphy v. Inge, 14 Ala. Rep. 289,) and of other States having a similar statute. See the cases on the brief of the defendant's counsel; also Graham v. Graham, 6 Monroe, 562; Chaplin v. Simons' Heirs, 7 ib. 338; White v. Clarke, ib. 640.

It is, however, further contended, that if the widow were entitled thus to hold, she has forfeited this right by her subsequent marriage. In respect to the widow's quarantine, as the same was secured by the old law, this was doubtless true. It is said that before the conquest the widow had the right to remain in her husband's home a whole year after his death, within which time her dower was to be assigned her; but if she married before the year was out, she forfeited not only her dower, but whatever her husband had left her. But the privilege of quarantine, which permitted her to remain forty days in the husband's messuage or mansion-house, and which was confirmed by magna charta, ceased upon her marriage within forty days. The reason assigned is that the widow is then otherwise provided for, and her sorrowful condition, which exempts her from expedients to obtain, during that period, a maintenance, is supposed to be at an end. Bacon's Abr. title Dower & Jointure, B. 1, of Quarantine; Co.

Litt. 32, b. But the rigor of these ancient rules has given place to a more humane and enlightened policy, and however just may have been the construction of the English courts of the term *"vidua maneat,"* employed in *magna charta,* restricting the privilege of quarantine to the condition of widowhood, we have not the remotest idea that the Legislature of this State ever contemplated the forfeiture of her right by a subsequent marriage. We have been unable to find any express adjudication upon this point by any of the courts of our sister States; but the cases are numerous where the husband has shared with his wife this humane provision of the law, and the fact of so general an acquiescence in her right is persuasive at least to show that her subsequent marriage does not work a forfeiture. It is but a statutory substitute for dower until it is assigned her, and if the subsequent marriage should work a forfeiture of the one, for the same reason the other should be forfeited also. No one, however, would contend that dower proper would be forfeited for such cause. Singleton's Heirs v. Singleton's Ex'rs, 5 Dana's Rep. 87, and 3d J. J. Marshall 48, affirm the doctrine above laid down of the widow's right to hold the premises rent free, until the assignment of dower. The construction of the statute contended for by the counsel for the plaintiff in error, would be in restraint of marriage, which the law ordinarily favors, and we do not feel authorised to adopt it, but the reverse, as consistent with public policy.— It is further agued, that the husband's vendee cannot proceed to have dower assigned to the wife, and therefore she must petition for it in a reasonable time, or be subject to ejectment. The argument cannot be supported. We think it very clear, the alienee of the husband may resort to a Court of Chancery to have the widow's dower assigned her, so that he may be let into possession of the remainder of the land. If he take the whole of the profits, he is in equity considered a trustee as to the widow's share. 8 Gill & Johns. 50; 3 Rand. 371.

As to the payment of rent by the defendant, Synott, to the lessor of the plaintiff, it is shown that such payment was merely gratuitous, and was doubtless made under a mistaken view of his rights. The relation of landlord and tenant did not in fact exist by any valid contract; Synott having the right with his wife to occupy the premises until dower was assigned to the

wife, the gratuitous payment of rent could not,estop him from showing the true character in which he held the premises. He entered under no lease, but held in right of his wife, and although the payment of rent raised the presumption of a lease, it was but a presumption, and therefore liable to be rebutted.

We are unable to discover any error in the record, and the judgment of the Circuit Court must be affirmed.