G. R. GRAY v. MATTIE MUSE CALLAHAN, *et vir*.

197 So. 396

Division B

Opinion Filed July 12, 1940

674

*W. R. Smith and G. B. Fishback,* for Plaintiff in Error; *Radebaugh & Radebaugh* and *Dickinson & Dickinson,* for Defendant in Error.

BROWN, J.—This is a statutory proceeding for unlawful detainer (see Sections 5310-5314 C. G. L. of 1927), instituted April 10, 1939.

Gray, defendant below, was in possession of a certain described lot of land in Orlando, Orange County, Florida, the ownership of which was claimed by Mattie Muse Callahan, plaintiff below. Gray admitted possession of the land and further testified that he had formerly paid rent to Collins under a lease made in 1937, which he claimed to have received in writing from Collins, whom he considered to be the owner. That after he had been informed that Acor, Inc., and then Callahan, had acquired the property, he had paid the rent to their respective agents. He attempted to show, however, that he agreed to pay rent to Callahan or her agents only provided it was agreeable with Collins for him to do so. Gray testified that Collins would not agree to his paying rent to Callahan, and that Collins did not consent to his paying rent to Callahan at any time. This testimony was struck as being immaterial, and that there was no showing, other than Gray's testimony, that Collins had, or had asserted, any rights whatsoever in regard to the rents. The lease referred to by Gray was never offered in evidence.

Plaintiff introduced in evidence a deed dated October 15, 1937, from A. C. Collins to Acor, Incorporated, and also a deed dated October 18, 1937, from Acor, Inc., to plaintiff Callahan. These deeds were proffered by plaintiff, not to show title, but merely the right to possession. Defendant objected to their introduction for any purpose other than to show the boundaries of the land, and the court admitted them for such latter purpose.

Plaintiff also introduced testimony to the effect that Gray had agreed to remain on as a tenant of Callahan after she had obtained a deed to the property and had paid rent to

Callahan's agents monthly from early in 1938 up to and through February, 1939. One of Callahan's agents admitted that Gray had told him he had a written lease from Collins, and it also appeared that Acor, Inc., had agreed that Gray could continue in possession under his former lease which he claimed to have from Collins, and pay the same amount of rent to Acor, Inc., to which Gray assented. That thereafter he paid the rent to plaintiff as above stated. On April 4, 1939, formal notice was served on Gray to pay the two months delinquent rent in three days, or vacate the premises. Gray admitted that he had paid the rent to Acor, Inc., but did so on its agent's representation that Collins had authorized Acor, Inc., to collect it, and that he later had agreed to pay the rent to Callahan provided it was all right with Collins, who had leased the property to him.

He then testified that some months later he had seen Collins in February, 1939, and that Collins would not agree to his paying rent to Callahan at any time, but this testimony was stricken by the court on plaintiff's objection that it was immaterial and that there was no showing that Collins had any rights in the matter whatever.

Gray in his testimony made certain admissions, one of which was that when Dr. Callahan, the husband of Mattie Muse Callahan, first came to see him about the rent, he did not think anything was said about Collins, whereupon his counsel asked him, "You mean you agreed to pay him rent even if Collins didn't agree for you to pay him rent?" To which Gray answered: "Well, I did at that time. I didn't want to get into the courts. I didn't know whether it belonged to him or Collins." Gray also testified that the payments he made were made as payments of rent for the premises. Then he paid Mr. Giles, representing Acor, Inc., $15.00 as the first month's rent, which was increased to $22.00, $7.00 being for rent of another and additional part

of the lot, which additional portion he rented from Giles, who was acting for Acor, Inc., and Gray used it for a wood yard; that he paid this $22.00 for two months, which was then increased to $25.00 and later to $30.00 per month. The evidence shows that Gray paid $30.00 per month to Callahan, as rent for the entire lot from about the middle of 1938 up to through February, 1939, when he ceased paying. Other evidence in the case indicates that the rent was so increased by agreement between the parties and that the tenancy was extended by agreement from a 50-foot portion of the lot so as to embrace the entire lot.

Gray moved for an instructed verdict on the grounds, (1) that it did not appear that plaintiff had ever been in possession of the land; (2) that it did not appear that defendant's tenancy had ended. This motion was denied, and on plaintiff's motion, the court instructed the jury to render a verdict awarding the plaintiff possession of the premises and $60.00 for the delinquent rent.

Plaintiff in error contends that the mere fact that one pays rent to another is not conclusive evidence of the existence of the relationship of landlord and tenant; citing Taylor's Landlord & Tenant, 8th ed., par. 14, wherein it is said:

"The relation of landlord and tenant subsists by virtue of a contract, express or implied, between two or more persons for possession of land or tenements in consideration for certain rent to be paid therefor." Taylor's Landlord and Tenant, Volume 1, Eighth Edition, paragraph 14.

And this same author, paragraph 23, states:

"But the receipt of rent is only a prima facie acknowledgment of the existence of a tenancy, and is always subject to explanation; for where the amount received does not appear to have been paid as rent or bears but a small portion to the annual value of the premises, the rule does not apply."

But in this case, the defendant Gray admitted that he had leased a large part of the lot from Collins, who conveyed the lot to plaintiff's grantor, Acor, Inc., and later that he, the defendant, had rented the remainder of the lot from plaintiff, or her immediate grantor, and had paid the agreed rent for a number of months before this suit was brought.

We have held that during the life of a .lease the lessee holds an outstanding leasehold estate in the premises, which for all practical purposes is equivalent to absolute ownership. Baker v. Clifford-Mathew Inv. Co., 99 Fla. 1229, 128 So. 827. The estate of the lessor during such time is limited to his reversionary interest which ripens into perfect title at the expiration of the lease. Rogers v. Martin, 87 Fla. 204, 99 So. 551.

But defendant Gray never introduced in evidence his alleged written lease from Collins, and hence no showing was made to the trial court as to when that lease began or when it expired, nor what its provisions were. The substance of what was shown by defendant was merely that he was renting that part of the lot on which he had a filling station from Collins, and was in possession under a lease from him, when Collins conveyed the lot to plaintiff's grantor, Acor, Inc.

The effect in general of a conveyance of the reversion is well expressed in 16 R. C. L. 641, as follows:

"After a landlord has transferred his reversion all privity of estate between himself and his lessee is terminated, and his right to enforce covenants and agreements on the part of the lessee, not broken at the time of the transfer and which run with the reversion ceases; the right to enforce such agreements is then vested in the transferee of the reversion. Thus the right to rent accruing after the transfer of the reversion passes to the transferee, and the original lessor has no right to maintain an action against the lessee

to recover the same, though he has expressly covenanted or agreed to pay rent to the lessor. The transferor of the reversion may, however, after the transfer, maintain an action upon the lessee's contract to pay rent, if the same had fully accrued prior to the transfer, and he may in the transfer expressly reserve the rent for part or all of the term granted by the lease, in which case he may sue the lessee upon the contract the same as if there had been no transfer."

Formal attornment of the tenant to the grantee of the reversion, which was required by the old common law, was made unnecessary by statute of 4 & 5 Anne, c. 16, Sections 9 and 10. See 16 R. C. L. 636.

"As the deed from Collins, Gray's former landlord, to Acor, Inc., contained no reservation of rents accruing thereafter, it amounted to a relinquishment by Collins of his rights to subsequently accruing rentals to his grantee, and the conveyance of the reversion by Acor, Inc., to Mrs. Callahan had the same effect.

"Appellees contend that appellant's defense in the court below was an indirect effort to dispute his landlord's title, and this he could not do. The general rule of course is that a tenant is estopped from disputing his landlord's title, but there are several exceptions to and qualifications of this rule. Thus, in Blankership v. Blackwell, 124 Ala. 355, 27 So. 551, 82 Am. St. Rep. 175, we find in the opinion of Mr. Justice DOWDELL the following pertinent comments:

"In considering this question, it is well to notice, first, that 'a distinction is made between cases where the party has received possession from the lessor, and where he has merely admitted his title by paying rent, attorning, or even by taking a lease. In the former case he is estopped from denying the lessor's title in any event, but in the latter the defendant may rebut the presumption arising from such payment by showing that he paid rent under a mistake or

through misrepresentation. Even an express agreement with one who claims to be landlord does not preclude the tenant from afterwards showing that the party claiming had no title, and that the payment or other acknowledgment was induced by misrepresentation or under mistake, the tenant not having been originally let into possession by the claimant.' Tayl. Landl. & Ten. 707, cited approvingly by this court in the case of Farris v. Houston, *supra;* Bigelow, Estop., p. 356; Shelton v. Carroll, 16 Ala. 153. The principle, as stated above, is qualified in some respects by the conclusion reached in the case of Camp v. Camp, 13 Am. Dec. 60, 61, where this question is exhaustively treated, and the conflicting decisions of the courts hereon reviewed. The doctrine as there stated is that, in the case of a tenant already in possession, 'acceptance induced by fraud, mistake, misapprehension of the facts as to the state of the title, or by duress or other improper means used by the lessor, works no estoppel.' In this case it is further held that in the absence of fraud, mistake, imposition, or duress, the bona fide acceptance of a lease by one in possession works an estoppel to deny title in his lessor, 'at least until the term expires.' In the light of these authorities, there can be no serious doubt of the correctness of the following propositions: (1) The acceptance of a lease by one already in possession works no estoppel in any case where such acceptance was induced by fraud, mistake, misapprehension of the facts, duress, or other improper means used by the lessor; and that (2) in the absence of fraud, mistake, misapprehension, duress, or other improper means upon the part of the lessor, the acceptance of such a lease by one in possession works no estoppel after the term has expired. In addition to the authorities above quoted, this position is sustained in 12 Am. & Eng. Enc. Law, pp. 704, 705; Greenl. Ev. 305; 2 Smith, Lead. Cas. 752."

The question of title *per se* is not involved in such an action as this, but the question of right of possession, which is an element of title, is involved, and a transfer by deed of the reversion and the acknowledgment by the tenant of the transferee as his landlord and the payment of rent to the transferee are proper questions to be considered in determining whether or not the relation of landlord and tenant has been established between them.

While the defendant Gray may not have been estopped to dispute his landlord's title as to a part of the property in this case, in view of the fact that he was already in possession of such part of the lot when plaintiff's grantor acquired the conveyance from Collins, who had put defendant in possession originally of a portion of the lot, the fact remains that defendant did not make any successful effort to dispute such title, even if title could be considered here. The evidence shows that both plaintiffs and defendant claim through Collins. Defendant claims that he became the tenant of Collins, and thus impliedly bases his defense on the theory that Collins had sufficient right or title to place defendant in lawful possession of his tenant. If this be true, then Collins' conveyance to Acor, Inc., and Acor's conveyance to plaintiff, without any reservations, amounted *inter partes* to a transfer of the reversion, and vested in the respective grantors, successively, the right to collect the rents, and hence it would not have done defendant any good if he had been able to show that Collins had no title to begin with; and this he was estopped from doing, as Collins had originally placed him in possession as a tenant, and his contention apparently is that this tenancy under Collins had never expired, though this contention was never proven by the introduction of his alleged written lease. The failure to introduce this lease in evidence, which was presumably identified by the defendant Gray when on the

stand, was itself in the nature of an admission that its introduction would not have been of any value to the defendant. Furthermore, it appears that he acknowledged some right and title in Acor, Inc., by renting from that corporation a part of the lot which he had not theretofore leased from Collins.

Appellant further contends that the grantee of land who has never had actual possession cannot maintain the statutory action of unlawful detainer; citing the case of Brumick v. Morris, 122 Fla. 236, 165 So. 351, wherein the case of Goffin v. McCall, 91 Fla. 514, 108 So. 556, is cited with approval. And in Goffin v. McCall, the case of Perry Naval Stores Co. v. Griffin, 57 Fla. 133, 49 So. 554, is cited. But in the later case of State *ex rel.* Rich v. Ward, 135 Fla. 885, 185 So. 846, this Court reviewed the prior cases, and reached the conclusion that in an action brought, like this one, under Section 5312 C. G. L. (3459 R. G. S.), the statute provides a remedy for one deprived of possession whether theretofore in actual possession or not.

Sections 5309-5316 C. G. L., 3456-3463 Rev. Gen. Stats., derived from Chapter 1630, Acts of 1868, govern the action of forcible entry and detainer and also the action of unlawful detainer. This is an action of unlawful detainer brought under Section 5312 C. G. L., which reads as follows:

"5312. (5459.) Remedy declared for unlawful detention.—If any person shall enter or shall have entered in a peaceable manner into any lands or tenements, in case such entry is lawful, and after the expiration of his right shall continue to hold the same against the consent of the party entitled to the possession, the party so entitled, whether as tenant of the freehold, tenant for years, or otherwise, shall be entitled to the like summary remedy at any time within three years after the possession shall so have been withheld from him against his consent."

In State *ex rel*. Rich v. Ward, *supra,* a case of unlawful detainer brought under Section 5312 C. G. L., in the county court, this Court, speaking through Mr. Justice BUFORD, who wrote the opinion in Brumick v. Morris, *supra,* reviewed several of our prior cases, including the case of State *ex rel*. West Drug Stores, Inc., v. Cornelius, 110 Fla. 299, 149 So. 332, which was an action for unlawful detainer to which Section 5312 was held applicable, and among other things said:

"The suit in the county court as indicated by the record was not an action for forcible entry, but was one for unlawful detainer. The statute, *supra, inter alia* provides a remedy for one deprived of possession whether theretofore in possession or not.

"Section 3438 R. G. S., 5311 C. G. L., provides a remedy for one who is unlawfully turned out of possession by forcible or unlawful entry. The cases of Goffin v. McCall, 91 Fla. 514, 118 Sou. Rep. 556, and Perry Naval Stores Co. v. Griffin, 57 Fla. 133, 49 Sou. Rep. 554, involve proceedings under the latter statute." * * *

"The only factual difference between that case and the case at bar is that in the West Drug Stores, Inc., case the suit in the County Judge's Court was by a lessee of the owner against a tenant claiming his rights to hold under a prior lease and in this case the suit is by the grantee from the former owner against a prior lessee of the former owner.

"The case of *Ex Parte* Bienville Investment Company, Inc., 102 Fla. 524, 136 Sou. Rep. 328, is in line with the West Drug Stores, Inc., case, *supra,* and deals with questions involved here. In that case it was said:

" 'It is contended that because the petition of the landlord alleges that the premises are occupied by the defendant under a written lease that title is necessarily thereby involved.

" 'There might be cases in which title to real estate would be involved in an action in which the eviction of a tenant was sought, but the record here fails to show that title is so involved in this case as to place the same beyond the jurisdiction of the county court.

" 'It may be said as a general rule that a tenant is estopped from denying the title of the landlord, but it does not follow that a tenant may not deny the existence of the relationship of landlord and tenant and, therefore, if that relationship is denied the question of the title might be involved. The demurrer admits that the defendant is the tenant of the landlord seeking to evict the tenant from the premises involved here.

" 'Every case involving the unlawful detention of property would involve an element of title, to-wit, the right of possession, but our Constitution does not prohibit this element of title being determined by the county court. Section 18, Article V, of our Constitution grants jurisdiction of the county court, 'of proceedings relating to the forcible entry or unlawful detention of lands and tenements.' "

In this case certain questions were propounded by defendant's counsel to defendant relative to Collins' consent or nonconsent to the payment of rent by defendant to plaintiff or her agent, to which questions the court sustained objections. In view of what has been said above, we do not think any reversible error was committed. It has been made to appear that Collins had relinquished all interest he may have had in the subject matter by his deed to the corporation, which corporation subsequently conveyed the property to plaintiff, nor was there any showing made by defendant as to when his original lease from Collins expired.

Taking the record as a whole, there was no substantial disputed issue of fact presented by the evidence which required the court to submit same to the jury. Therefore

**686**

there was no error in giving an affirmative instruction in favor of the plaintiff, who had made out a good case under Section 5312 C. G. L. The judgment below will therefore be affirmed.

Affirmed.

WHITFIELD, P. J., and CHAPMAN, J., concur.

BUFORD, J., concurs in opinion and judgment.

Chief. Justice TERRELL and Justice THOMAS not participating as authorized by Section 4687, Compiled General Laws of 1927, and Rule 21-A of the Rules of this Court.