133 So.2d 38

Walter FUDGE et ux.

v.

COUNTY BOARD OF EDUCATION of WILCOX COUNTY.

2 Div. 400.

Supreme Court of Alabama.

Sept. 14, 1961.

522

Pitts & Pitts and Cecil C. Jackson, Jr., Selma, for appellants.

Craig, Hobbs & Hain, Selma, for appellee.

COLEMAN, Justice.

This is an appeal by respondents from a final decree which quieted the title of complainant to the land in controversy. Complainant is the County Board of Education of Wilcox County. Respondents are Dr. Walter Fudge and his wife.

This land consists of approximately two acres at Lamison in Wilcox County. It is bounded on the east by Alabama State Highway No. 5, on the north by the dwelling place of respondents, and on the south by the dwelling place of one Hunter Dunaway who is sometimes referred to as H. L. Dunaway. The ownership of the land on the west is not altogether clear but appears to be in the respondent, Dr. Fudge. The land in suit is described as two adjoining lots, each of which contains approximately

one acre and each of which is shown as a four-sided figure on the map or plat. The lot on the west is shown as equilateral and is designated "School Lot Proper." The school building is located on this west lot. The lot on the east, which borders on the highway, is designated "Intervening School Lot." Respondents insist on a distinction between the two lots with respect to use and title. Complainant says the difference in designation is made only to facilitate description. There are photographs of the lots in evidence. We have carefully examined these photographs together with the other evidence and are not able to distinguish any dividing line between the two lots on the ground.

The claim of complainant is founded on prescription. The claim of respondents is based on an alleged paper title plus recognition of that title by complainant as a tenant.

The trial court heard testimony ore tenus and rendered a decree declaring that complainant owns in fee simple and that respondents have no right, title, or interest in the land. Respondents assign rendition of the decree as error. We are of opinion that the decree is not erroneous.

The evidence is without conflict in certain respects but is contradictory in others. The parties stipulated that H. Dunaway, known also as Howard Dunaway, owned the land in suit in fee simple on and prior to December 26, 1907. The respondent, Dr. Fudge, claims to hold the record title by a chain of conveyances from Howard Dunaway who conveyed to Claudius Dunaway in 1908. Claudius Dunaway conveyed to J. L. Moore in 1912. J. L. Moore conveyed to Miller & Company, Inc., a corporation, in 1946, and that corporation conveyed to the respondent, Dr. Fudge, by quitclaim deed dated September 14, 1949. Dr. Fudge has also three later deeds to him from Miller & Company, Inc., dated, respectively, November 28, 1949, February 12, 1951, and May 11, 1954. The two latest deeds recite that they are made to correct earlier deeds. The several deeds in the chain from Howard Dunaway to Miller & Company, Inc., are conveyances of a larger tract purporting, as respondents insist, to include the two acres in suit. There are a number of exceptions in the respective descriptions. Complainant makes some point that the descriptions do not convey the two acres here involved, and it is certainly not entirely clear to us whether the two acres are included in or excepted from the descriptions. In view of the fact, however, that our decision does not turn on that point, we pretermit determination of the sufficiency of the descriptions and, for the purposes of this decision, assume that the two acres are included in the conveyances to Miller & Company, Inc.

Dr. Fudge has also two quitclaim deeds from Claude Dunaway, the same person as Claudius Dunaway, supra, one dated September 12, 1949, and the other dated January 27, 1951. The later deed recites that it is a correction deed. Both deeds, as we understand them, convey the same one acre of land, to wit, School Lot Proper.

We understand that both Howard and Claudius Dunaway had died before the trial of this case.

■ We are of opinion that the evidence supports a finding that complainant, the County Board of Education of Wilcox County, and its predecessor in title, the trustees of the school district, have had actual, peaceable possession of the two acres in suit from some undetermined day in 1907 until the bill of complaint was filed in this suit on May 21, 1956; that complainant's possession as aforesaid continued until the trial of this cause; and that neither the right to possession or title of complainant, or its predecessor, was ever questioned from 1907 until 1949 when Dr. Fudge advanced his claim to the land.

Dr. Fudge testified that the first room of the schoolhouse was built in 1907. It appears that additions were added later and that the front was turned from north to east so as to face the highway. A school was operated in the building each year, by

complainant or its predecessor, from 1907 until the close of the school year in the Spring of 1957 after this suit was begun. No school has been operated there since 1957.

■ No conveyance of the land in suit to trustees or to the complainant, prior to a deed from Dr. Fudge after 1949, is shown. There are references in the testimony which tend to show that a deed of some sort was executed by Howard Dunaway to the trustees, dated December 26, 1907, but, as we view it, this testimony will not suffice to support a finding that such a deed was ever delivered or what its recitals were.

Some time after the date of the first quitclaim deed from Miller & Company, Inc., dated September 14, 1949, and from Claude Dunaway, dated September 12, 1949, Dr. Fudge negotiated with complainant regarding execution of a lease of School Lot Proper by Dr. Fudge as lessor to complainant as lessee. Complainant agreed to accept the lease and it was executed on behalf of complainant by its Executive Officer. The lease in evidence is dated October 3, 1949. Later, in 1951, negotiations were had with a view to cancellation of the lease and the execution of a deed by Dr. Fudge to complainant. Apparently Dr. Fudge and his wife did execute a deed which was delivered to complainant. There is testimony, uncertain in some respects, that the deed and lease were later returned to Dr. Fudge, and then returned by him to complainant. Eventually, after protests by citizens of the Lamison community, complainant authorized the bringing of the instant suit.

Respondents insist that the decree is in error for three reasons. First, they argue that complainant is estopped to deny the title of respondents "because of the relationship of Landlord and Tenant that had existed between the Complainant and the Respondent since October 3, 1949."

"The rule is well settled, and is not questioned, that a tenant can not dispute the title of his landlord, nor set up a paramount title in himself, or in a stranger, to defeat any action the landlord may institute for the recovery of rent, or, when the term has expired, to regain possession of the premises. There are various exceptions to, and qualifications of the rule, which are of as much importance as the rule itself, and which must be observed in the administration of justice between landlord and tenant. A plain mistake of facts constitutes one of the exceptions. The tenant may show that he attorned to the landlord, or accepted a lease from him, under mistake, and in ignorance of the true state of the title, and that the title was in himself, or out of the lessor.—2 Greenl.Ev. § 305; 2 Smith's Lead. Cases, 752; Taylor on Land. & Tenant, §§ 707–8. Fraud, or imposition, or undue advantage, the same authorities show, is another exception to the rule: whenever, by the fraud, or misrepresentation of the lessor, the lessee is induced to accept the lease, he may impeach the title of the lessor." Farris & McCurdy v. Houston, 74 Ala. 162, 167, 168.

See also: Shelton v. Carrol, 16 Ala. 148; Cain v. Gimon, 36 Ala. 168; Blankenship v. Blackwell, 124 Ala. 355, 27 So. 551; Irwin v. Coleman, 173 Ala. 175, 55 So. 492; Bank of New Brockton v. Dunnavant, 204 Ala. 636, 87 So. 105; Jones v. White, 230 Ala. 144, 160 So. 239; Stephens v. Stark, 232 Ala. 485, 168 So. 873; 2 A.L.R. 359.

The qualification of the general rule applies here. At the date of the lease, October 3, 1949, Dr. Fudge had two quitclaim deeds, one from Miller & Company, Inc., dated September 14, 1949, and one from Claude Dunaway, dated September 12, 1949. Both deeds contain the following recital:

"The buildings now on said lot are being used as a white school with the permission of the former owners. It is expressly understood and agreed between the parties hereto that the

above described property may continue to be used for white school purposes, and this reservation is made by grantor. In the event said property shall cease to be used for white school purposes, then the title to said property including all buildings and improvements shall vest in said Walter Fudge."

The lease of October 3, 1949, executed by respondents as lessors, and by complainant as lessee, contains the following provision:

"This lease agreement to commence on the 3rd day of October, 1949, and to terminate only in the event said property ceases to be used by lessees for white school purposes. Said property is now being used for white school purposes. In the event lessee fails to use same for such purposes for any reason then this lease agreement to become null and void. The consideration for this contract being the sum of One ($1.00) Dollar, the receipt whereof is hereby acknowledged by said lessor."

With reference to the lease, Dr. Fudge testified as follows:

"Q. So you acquired any title that Claude Dunaway had to these lands and any title Miller & Company had to these lands? A. How is that?

"Q. I say you acquired by these deeds you testified to any title Miller & Company had to these lands subject of this suit and any title Claude Dunaway had, is that right? A. Yes.

"Q. After you had acquired that title, did you go to the Board of Education of Wilcox County? A. Yes, sir.

"Q. Did you make—what representations did you make to them or what did you tell them? A. Well, I explained the best I could. I told them I had bought that property. I explained to them that Howard Dunaway agreed with the old board at that time and Trustees, and I also told them I had deeds to it and took the deeds and put

them on the table right before Mr. Adams and let him see and read them. They are obliged to know I owned it.

\*     \*     \*     \*     \*     \*

"Q. Did you and Mrs. Fudge sign that lease contract? A. Yes.

"Q. And on October 28 did you appear before the School Board with that lease contract? A. I appeared so many times, to tell you the truth I don't know the dates.

"Q. But did they accept it? A. Yes, sir; they accepted it. And I explained to them that one reason, the main reason I wanted that lease between us was to establish ownership and to acknowledge ownership to the property; and they understood that when they accepted it, for I told them."

On October 3, 1949, the deeds held by Dr. Fudge, on their face, gave him no right to immediate possession, but on the contrary recognized complainant's right to possession. If, however, the deeds to Dr. Fudge be regarded as absolute on their face, as the later correction deeds attempted to make them, he gained no title because his grantors had none to convey. Complainant and its predecessor, the trustees of the school district, had had 42 years of undisputed possession without recognition of adverse right.

▇ This court has adhered with uniform tenacity to the doctrine of prescription and has repeatedly held that the lapse of 20 years, without recognition of right or admission of liability, operates as an absolute rule of repose.

▇ In this respect the elements on which the doctrine of prescription is applied differ from those of adverse possession. In the first there must be an individual, continuous possession of user, without the recognition of adverse rights, for a period of 20 years, and upon the establishment of such claim and user, the law presumes the existence of all the necessary elements of adverse possession of title without

fuller proof, while under a mere claim of adverse possession through the period prescribed by the statute of limitations no such presumption prevails, and all the elements must be established by him who asserts such possession or title. Morris v. Yancey, 267 Ala. 657, 104 So.2d 553. See also: Ballenger v. Liberty National Life Insurance Company, 271 Ala. 318, 123 So.2d 166, and authorities there cited with respect to prescription.

■ We are of opinion that the evidence supports a finding that complainant had acquired title by prescription; that, although it may be conceded that Dr. Fudge acted in good faith and under a bona fide belief that he had title, the lease whereby complainant purported to attorn to respondents was entered into by mistake or misapprehension; and, therefore, complainant is not estopped to show its own rights or deny respondents' title.

As a second reason to show error, respondents assert that complainant has failed to prove that its possession, and that of its predecessor, was under a claim of ownership and with an intention to claim title adversely to respondents. Respondents insist that the original possession of complainant's predecessor was with the permission of the owner and permissive use of land will never ripen into title.

■ We do not agree that the evidence shows that the possession of the lots by the trustees commenced in 1907 as a permissive possession. The evidence fails to show how that possession commenced. Certain it is that the trial court is not in error in refusing to find that the original possession was permissive. The only evidence to show that it was permissive is the testimony of Dr. Fudge to the effect that Howard Dunaway had told him, Dr. Fudge, that the possession was permissive at its inception. Such evidence is of doubtful competency, because it is hearsay, and because it is self-serving as to Howard Dunaway as well as to Dr. Fudge, but even if competent the court was not compelled to accept it. There were a number of witnesses of adequate age and acquaintance with the land who testified that the possession of complainant, and its predecessor, had continued without question and without recognition of adverse right for forty-two years from 1907 to 1949.

There is evidence from which the court could find that complainant had continuous, open, notorious, exclusive possession of the land in suit for more than forty years before Dr. Fudge received his conveyance in 1949. Under the rule of Morris v. Yancey, supra, and the authorities therein cited, upon establishment of complainant's possession for more than 20 years without recognition of adverse right, the law presumes the existence of all the necessary elements of adverse possession of title without fuller proof. There was no recognition of adverse right during the prescriptive 20-year period, and the law presumes the existence of the intent to claim title. We do not hold that the evidence fails to show intent to claim title. We are inclined to think there is some testimony from which such claim can be inferred, but even if there were no such testimony, the law would presume that element, because there is proved unchallenged possession for 20 years without recognition of adverse right.

The third proposition argued by respondents to show error is: that as to "Intervening School Lot," the acre on the east bordering the highway, complainant has not only failed to show possession under claim of ownership, but has failed even to show possession.

■ The evidence does not persuade us that there has been a difference between the two acres with respect to possession. The evidence supports a finding that both lots were used as a playground in connection with the school. We are of opinion that the evidence heard ore tenus supports a finding that the occupancy of complainant extended to both acres without a distinction between them.

Error not being shown in the decree appealed from, it is due to be and is affirmed.

Affirmed.

LIVINGSTON, C. J., and SIMPSON and GOODWYN, JJ., concur.