451 So.2d 1034 (1984)
STORER CABLE T.V. OF FLORIDA, INC., Appellant,
v.
SUMMERWINDS APARTMENTS ASSOCIATES LTD., a Florida Limited Partnership, Appellee.
No. 83-2433.
District Court of Appeal of Florida, Third District.
June 26, 1984.
*1035 Daniels & Hicks and Louise H. McMurray, Miami, Dixon, Dixon, Hurst & Nicklaus, Tallahassee, for appellant.
Greenberg, Traurig, Askew, Hoffman, Lipoff, Rosen & Quentel and Alan T. Dimond and Lawrence S. Gordon, Miami, for appellee.
Before SCHWARTZ, C.J., and BARKDULL and DANIEL S. PEARSON, JJ.
PER CURIAM.
This appeal questions the appropriateness of the trial judge declaring Section 83.66 Florida Statutes (Supp. 1984)[1] and Section 8A-132(b) of Metropolitan Dade County Code[2] unconstitutional by a judgment on the pleadings.
Storer Cable, acting under the franchise granted it to service Dade County (Section 8A-132(b) Metro Dade Code), responded to the requests of several tenants of Summerwinds Apartments for cable television. The Storer representatives, however, were refused access to the apartment complex by the resident manager. To comply with the tenants' demands for service, Storer sought an injunction to prohibit further interference by Summerwinds and damages, alleging it had a right to enter upon the premises of Summerwinds for the purpose *1036 of installing and maintaining a CATV System. Summerwinds answered raising the affirmative defense that the enactments upon which Storer relied constituted an unconstitutional taking of property without compensation. Summerwinds moved for a judgment on the pleadings, which was granted. The judgment reads as follows:
"THIS CAUSE, having come on to be heard on August 31, 1983, on the Defendant's Motion for Judgment on the Pleadings, and thereafter, on the Plaintiff's Motion to Amend Final Judgment on October 4, 1983, and the Court after having heard argument of counsel, reviewing the pleadings, and being otherwise fully advised in the premises, it is therefore
ORDERED AND ADJUGED: (sic)
1. That Defendant's Motion for Judgment on the Pleadings be and the same is hereby granted.
2. The Plaintiff cannot prevail on its Complaint because the statute and ordinance on which it relies, Florida Statute, § 83.66 (1982 Supp.) and § 8A-132(b) of the Code of Metropolitan Dade County, are unconstitutional on their face as a taking of property without just compensation or due process of law, in violation of the Constitution of the State of Florida and the Constitution of the United States. Loretto v. Teleprompter Manhattan CATV Corp., 458 U.S. 419, 102 S.Ct. 3164, 73 L.Ed.2d 868 (1982).
3. In relying on the case of Loretto v. Teleprompter, supra, this Court holds that the Plaintiff's request in its Complaint filed in this cause for access upon the Defendant's land would constitute a "permanent physical occupation" of the Defendant's land, and therefore constitutes a taking. See Loretto v. Teleprompter, supra, at 3171, 3175-76, and 3179.
4. The Plaintiff shall take nothing by this action and Defendant shall go hence without day."
We find no error in the judgment entered. The trial court was eminently correct in determining that the statute and ordinance involved, which are quoted in footnotes one and two, are unconstitutional as permitting a taking of property in a multi-family complex without compensation as the United States Supreme Court said in Loretto v. Teleprompter Manhattan CATV Corp., 458 U.S. 419, 102 S.Ct. 3164, 73 L.Ed.2d 868 (1982).
"In short, when the `character of the governmental action,' Penn Central [Transportation Co. v. City of New York] 438 US [104] at 124, 57 L Ed 2d 631, 98 S Ct 2646 [at 2659] is a permanent physical occupation of property, our cases uniformly have found a taking to the extent of the occupation, without regard to
[458 U.S. 435, 102 S.Ct. 3176]
whether the action achieves an important public benefit or has only minimal economic impact on the owner.
B
The historical rule that a permanent physical occupation of another's property is a taking has more than tradition to commend it. Such an appropriation is perhaps the most serious form of invasion of an owner's property interests. To borrow a metaphor, cf. Andrus v Allard, 444 U.S. 51, 65-66, 62 L Ed 2d 210, 100 S Ct 318 [326-327] (1979), the government does not simply take a single "strand" from the "bundle" of property rights: it chops through the bundle, taking a slice of every strand.
* * * * * *
The traditional rule also avoids otherwise difficult line-drawing problems. Few would disagree that if the State required landlords to permit third parties to install swimming pools on the landlords' rooftops for the convenience of the tenants, the requirement would be a taking. If the cable installation here occupied as much space, again, few would disagree that the occupation would be a taking. But constitutional protection for the rights of private property *1037 cannot be made to depend on the size of the area permanently occupied."[13]
Indeed, it is possible that in the future, additional cable installations that more significantly restrict a landlord's use of the roof of his building will be made.
Affirmed.
NOTES
[1] 83.66 Right of tenant to obtain franchised or licensed cable television service. 

(1) No tenant having a tenancy of 1 year or greater shall unreasonably be denied access to any available franchised or licensed cable television service, nor shall such tenant or cable television service be required to pay anything of value in order to obtain or provide such service except those charges normally paid for like services by residents of, or providers of such services to, single-family homes within the same franchised or licensed area and except for installation charges as such charges may be agreed to between such tenant and the provider of such services.
(2) In determining whether to permit cable television service to a rental unit or complex, a landlord shall be authorized:
(a) To require that the cable television company submit to the landlord for approval detailed plans, specifications, and schematics for the proposed installation.
(b) To require that the installation of the cable be in harmony with the existing character of the complex and designed to maintain the aesthetic features of the site.
(3) Nothing herein shall be construed to require a landlord to permit more than one franchised cable television company to service the tenants residing in his rental units.
(4) Nothing herein shall be construed to require a landlord who has installed an independent television receiving unit, which provides a television signal comparable to cable for use by tenants, to accept installation and provision of cable television services from any cable television company.
(5) Any cable television company which is authorized to provide service to a rental unit or complex shall be responsible for paying to the landlord any costs, expenses, or property damage that are incurred by the landlord during the installation, repair, or removal of the cable. Payment of such amounts shall not be construed as a payment of value in order to obtain or provide cable television services.
(6) In the event a cable television company which has been authorized to provide services to a rental unit or complex fails to substantially comply with the plans, specifications and requirements as agreed upon with the landlord, the landlord shall be authorized to require the immediate removal of all cable equipment. Failure to remove the equipment within a reasonable time period shall make the cable television company liable pursuant to the provisions of s. 810.08.
(7) Nothing herein shall be construed to supercede or in any way replace local cable television franchise agreements that provide stricter standards than those outlined in this section.
(8) A landlord may waive, in writing, all or part of the requirements of this section.
[2] Section 8A-132, Code of Metropolitan Dade County:

(a) The licensee shall not engage in the following activities without prior approval of the commission:
(1) Sale or service of television sets.
(2) Recommendations, by licensee or his employees, of specific television appliance dealers or servicemen for sales or service.
(b) No property owner:
(1) Shall charge any fees for the installation and service of a CATV system without prior approval of the county manager.
(2) Can deny any individual who occupies said property the right to have installed a system and have it serviced by a licensee.
(3) Charge any fee to a licensee without prior approval of the county manager. (Ord. No. 74-88, Sections 2, 16, 10-15-74).