493 So.2d 417 (1986)
STORER CABLE T.V. OF FLORIDA, INC., Appellant,
v.
SUMMERWINDS APARTMENTS ASSOCIATES, LTD., Appellee.
DYNAMIC CABLEVISION OF FLORIDA, INC., et al., Appellants,
v.
LENNAR CORPORATION, Appellee.
Nos. 65620, 65993.
Supreme Court of Florida.
March 13, 1986.
Rehearing Denied June 6, 1986.
Dixon, Dixon, Hurst & Nicklaus, Patrice A. Talisman of Daniels & Hicks and Louise H. McMurray, Miami, for Storer Cablevision of Florida.
H. James Catlin, Jr. and William M. Tuttle, II of Catlin, Saxon, Tuttle & Evans, Miami and Michael A. Pace and J. Christopher Redding of Dow, Lohnes & Albertson, Washington, D.C., for Dynamic Cablevision of Florida, Inc., et al.
Alan T. Dimond and Lawrence S. Gordon of Greenberg, Traurig, Askew, Hoffman, Lipoff, Rosen & Quentel, Miami, for Summerwinds Apartments Associates, Ltd. and Lennar Corp.
Robert W. Perkins and Craig A. Dennis of Perkins & Collins, Tallahassee, amicus curiae, for Florida Apartment Assn.
*418 OVERTON, Justice.
The appellants in these consolidated cases appeal the decisions reported as Storer Cable T.V., Inc. v. Summerwinds Apartments Associates, Ltd., 451 So.2d 1034 (Fla. 3d DCA 1984), and Lennar Corp. v. Dynamic Cablevision, Inc., 456 So.2d 935 (Fla. 3d DCA 1984), in which the Third District Court of Appeal declared invalid section 83.66, Florida Statutes (Supp. 1982). Section 83.66 prohibits landlords from denying cable television access to tenants and provides that no compensation shall be paid to the landlord for such access.[*] We have jurisdiction. Art. V, § 3(b)(1), Fla. Const. We agree with the district court that the placement of cable television equipment and wiring on apartment-complex property that is not specifically held out for tenant use constitutes a taking, and we conclude that the statute is unconstitutional under both the state and federal constitutions.
The facts giving rise to these two actions are as follows. Acting under the franchise granted it to service Dade County pursuant to section 8A-132(b), Code of Metropolitan Dade County, appellant Storer Cable responded to the requests of several tenants of appellee Summerwinds for cable television service. The resident manager refused Storer Cable's representatives access to the complex. Storer Cable sought an injunction, alleging it had a right pursuant to section 83.66 and section 8A-132(b) to enter Summerwinds' premises for the purpose of installing and maintaining a cable television system. In response, Summerwinds challenged the statute and ordinance as unconstitutional. The trial judge granted Summerwinds' motion for judgment on the pleadings, finding that section 83.66 and section 8A-132(b) are facially unconstitutional because they require a taking of property without justification or due process of law in violation of the state and federal constitutions. He stated:
In relying on the case of [Loretto v. Teleprompter Manhattan CATV Corp. 458 U.S. 419, 102 S.Ct. 3164, 73 L.Ed.2d *419 868 (1982)], this Court holds that the Plaintiff's request ... for access upon the Defendant's land would constitute a "permanent physical occupation" of the Defendant's land, and therefore constitutes a taking.
The district court of appeal affirmed.
In a similar situation, appellee Lennar refused to allow appellant Dynamic Cablevision to install the equipment necessary to provide cable television service to the residents of Lennar's apartment complex. Dynamic and three tenants sought a declaratory judgment of the tenants' right of access to Dynamic's cable television service and Dynamic's right to serve the tenants under section 83.66 and section 8A-132(b). The trial court found that section 83.66, in requiring a landlord to permit tenants to receive cable television service, is a proper exercise of the police power; however, citing Loretto, the court concluded that the intrusion of the cable television equipment necessary for access is a taking for which full compensation must be paid. Consistent with its Storer decision, the district court reversed with directions to enter judgment for Lennar, and expressly rejected the possibility that the statute's constitutionality could be "saved" by severing the provision mandating that no compensation be paid.
We agree with the decisions of the district court and find the reasoning of Loretto to be dispositive of the instant cases. In Loretto, the landlord challenged the right of a cable television company to place cable television components on the roof of a New York City apartment building she owned. In a class action brought on behalf of all New York real property owners, Loretto alleged that the cable television company's installation constituted a taking without just compensation insofar as the company obtained its authority from a New York statute that required landlords to permit cable television companies to install facilities on landlords' property.
After tracing more than a century of its applicable decisional law, the United States Supreme Court reaffirmed the rule that "a permanent physical occupation authorized by government is a taking without regard to the public interests that it may serve." 458 U.S. at 426, 102 S.Ct. at 3171. The Court found that the cable installation, which involved plates, boxes, wires, bolts, and screws attached to Loretto's building's roof and exterior wall, constituted "a taking under the traditional test" for which compensation must be paid. Id. at 438, 102 S.Ct. at 3177. Further, the Court noted that "constitutional protection for the rights of private property cannot be made to depend on the size of the area permanently occupied." Id. at 437, 102 S.Ct. at 3177.
Appellants urge us to distinguish section 83.66 from the statute struck down in Loretto, contending that, unlike the New York statute, the Florida statute vests enforceable property rights in tenants; it does not require a permanent occupation because it links cable service to tenancy duration; and it does not fall into the class of statutes that accomplish a per se taking because it allows landlords to exclude cable television franchisees by providing their own cable service to requesting tenants.
We reject appellants' arguments. To apply section 83.66 to the instant situations would require appellees to permit appellants to install cable equipment, including cables and wiring, on property that is not specifically held out for tenants use. A taking results regardless of the size of the occupied area. We do not agree that section 83.66 can be characterized as authorizing a temporary, rather than a permanent, physical invasion. Under the statute, once a tenant requests the service, the landlord is required to give up to the cable television company the exclusive possession and use of a portion of his property.
We also reject the argument that we should construe 83.66(5) as authorizing a taking and requiring payment of just compensation. Such a holding would be contrary to the clear intent of the legislature. Section 83.66(1), in unambiguous language, directs that no compensation be paid. Finally, we reject appellants' assertion *420 that this Court could strike the portion of the statute forbidding compensation and thereby render it constitutional. The excising of the "no compensation" clause from the statute would have the effect of establishing the power of eminent domain in cable television companies. The legislature made no finding that cable television serves a "public purpose" under article X, section 6, of the Florida Constitution, justifying the implementation of the state's power of eminent domain, nor did it provide a means for determining just compensation for takings under section 83.66.
For the reasons expressed, we hold section 83.66 is unconstitutional under article X, section 6, and article I, sections 2 and 9, of the Florida Constitution, as well as under the fifth and fourteenth amendments to the United States Constitution. We approve the decisions of the district court of appeal.
It is so ordered.
ADKINS, McDONALD, EHRLICH and SHAW, JJ., concur.
BOYD, C.J., dissents with an opinion.
BOYD, Chief Justice dissenting.
I dissent because I find that section 83.66, Florida Statutes (1983), is a reasonable regulation of the use of real property and a reasonable tailoring of the legal relationship between landlord and tenant. I find no taking of property of sufficient magnitude to require the payment of compensation, or even to present a justiciable question concerning compensation. I find that Loretto v. Teleprompter Manhattan CATV Corp., 458 U.S. 419, 102 S.Ct. 3164, 73 L.Ed.2d 868 (1982), is distinguishable. I conclude that section 83.66 is constitutional and should be upheld.
The differences between the Florida law and the New York law at issue in Loretto are substantial, significant, and should be pointed out because we need not feel bound to hold that this case is controlled by Loretto. The cable service law in New York gave the cable service company the right to affix cables and cable equipment to residential buildings without the owner's consent regardless of whether any tenants in the building had requested or were receiving cable service. The law provided for compensation as fixed by a state cable service commission and the commission had ruled that only a nominal compensation was required. The law was an attempt to require building owners to furnish cable service providers with space and support for cable lines and equipment for the purpose of making cable service more available generally, not for the purpose of making it available to the residential tenants living in the individual building in question. The law contemplated equipment being affixed to the exterior walls and roofs of buildings not only for the purpose of providing service to that building but also for the purpose of sending the cable and its signal on to other buildings. The law in effect provided cable service providers with an easement in the space required along the exteriors and on the roofs of privately owned buildings. Thus the United States Supreme Court found that the legally sanctioned "permanent occupation" by the capable owner of such privately owned space amount to a taking. The Florida statute is very different.
Section 83.66 provides that an owner of leased residential property may not interfere with the tenant's exercise of the opportunity to independently contract for the provision of licensed cable television service to the dwelling unit in which the tenant makes his home. In providing the tenant with this right, the statute does nothing different in principle from its provisions defining the rights and obligations of landlord and tenant. See Ch. 83, Fla. Stat. (1983). For example, section 83.51 requires the landlord, unless otherwise provided by a written lease, to provide dwelling units with running water. While the landlord who puts plumbing into an apartment building will own the internal pipes, unless he has a well for water he will have to allow a water supplier to extend its pipes and fittings into his property. It has never been suggested that such a requirement *421 that the pipes of the supplier touch the landlord's property constitutes a taking.
Under the majority's view, if a landlord owns a dwelling unit not equipped with the wires and fixtures required for the provision of telephone service, and the tenant wants telephone service and is willing to pay for its installation, the landlord can refuse to allow it or exact any fee he chooses to set on the ground that attachment of the wires and fixtures to the building is a trespass which the landlord is legally entitled to prevent. This view is dramatically ill-suited to the needs of the people at a time when society is experiencing a communications revolution.
Under the majority's view, a landlord is entitled to prevent the extension of wires for the furnishing of electricity to a leased house or apartment. Yet the ability of a tenant to contract for the provision of electricity to his home has been assumed to be a part of the landlord-tenant relation ever since the development of public utilities for provision of electricity to homes.
It is beyond question that the legislature has the authority to regulate the use of land and the legal relationships among persons in the interest of promoting and protecting the general welfare of society and the individual welfare of citizens. E.g., Village of Euclid v. Ambler Realty Co., 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303 (1926); Department of Business Regulation v. National Manufactured Housing Federation, Inc., 370 So.2d 1132 (Fla. 1979). The question of when a regulation, made in exercise of the police power, but which affects the economic features of a legal relationship, becomes a taking of property, requires careful analysis of the specific situation. There is no clear litmus test. The occupation of the space necessary for placement of a television cable is such a minimal intrusion that it is difficult to perceive any economic damage to the owner. Of course, the right to run wires and cables over or on the property of another is a property interest in the nature of an easement, having a market value, the appropriation of which requires the payment of compensation. E.g., St. Louis v. Western Union Telegraph Co., 148 U.S. 92, 13 S.Ct. 485, 37 L.Ed. 380 (1893). However, requiring a landlord to allow such cables on his property is similar to requiring a developer to dedicate easements for streets and utilities without compensation as a prerequisite to receiving the permission to subdivide and develop land.
The landlord-tenant relation is characterized by certain incidents that have been so clearly assumed for so long that it has never been thought necessary to explicitly set them forth either in leases or in regulatory statutes. Among these is the right of the tenant to obtain the provision of various amenities to the dwelling unit when available. In the past, such amenities have included electricity, water, gas, and telephone service. Today, cable television service is such an amenity.
Moreover, I do not see section 83.66 as providing for the intrusion or occupation of the property of the landlord as perceived by the majority. During the life of a lease of real property, the tenant has the exclusive right of possession of the demised premises. By statute or agreement such possessory right is subject to a right of access as needed for the landlord to perform maintenance functions as required by statute or by the lease. But in all other respects, the tenant's possessory right is the equivalent, during the term of the lease, to ownership of the fee simple title. E.g., DeVore v. Lee, 158 Fla. 608, 30 So.2d 924 (1947); Gray v. Callahan, 143 Fla. 673, 197 So. 396 (1940); West's Drug Stores, Inc. v. Allen Investment Co., 125 Fla. 823, 170 So. 447 (1936); Baker v. Clifford-Mathew Investment Co., 99 Fla. 1229, 128 So. 827 (1930); Rogers v. Martin, 87 Fla. 204, 99 So. 551 (1924). During the term of the lease, the landlord's ownership is what the law calls a reversionary interest, because absolute ownership will revert back to the landlord upon the termination of the lease at some time in the future. Burnette v. Thomas, 349 So.2d 1208 (Fla. 2d DCA 1977). One of the landlord's vested property rights incident to such a reversionary *422 interest is the right not to have the property damaged, that is, the right to get the property back upon reversion in substantially the same condition as it was in when demised to the tenant. The common law refers to damage to a reversion by one in rightful possession of property as "waste." E.g., Stephenson v. National Bank of Winter Haven, 92 Fla. 347, 109 So. 424 (1926); Stegeman v. Burger Chef Systems, Inc., 374 So.2d 1130 (Fla. 1st DCA 1979).
When a residential dwelling unit is leased to the tenant, the tenant has the paramount legal, possessory, ownership interest in the use, benefit, and enjoyment of the property as the above authorities show. Thus, during the term of the lease, the interior walls of the unit are the tenant's property. The interior walls cannot exist without exterior walls, so the exterior walls are also the tenant's property. One of the essential features of a house, whether a single-family house, a duplex, or a multi-unit apartment building, is a roof. During the term of a lease, the roof of a leased house is the property of the tenant or tenants. When a house is leased for residential use, such a conveyance of possession also normally includes the curtilage or yard of the house, so that the tenant has a right to the exclusive use and possession of such space. In the case of an apartment building, a tenant has the right to the use and benefit of such curtilage for purposes of ingress and egress and such other use as is reasonable, in common with the lessees of other apartments. Having leased the tenant an apartment, the landlord cannot exclude the tenant from the space surrounding the apartment house. The tenant must be able to traverse such space in order to enter and exit the leased apartment. The tenant has the right to occupy such space for all reasonable uses to which such space might be devoted, in common with other tenants.
Because during the term of a residential lease of an apartment or a house the tenant owns the house or apartment and the curtilage surrounding it, no property of the landlord is taken or even touched if the tenant contracts for and obtains the use of a cable for purposes of receiving a television signal. Any wires to be attached to the house or apartment building, and to be run across the air space overlying the curtilage of the house, affect only the property of the tenant. If done by consent of the tenant, no property rights of the landlord are impaired or affected.
Section 83.66 requires that the landlord be compensated for any damage to his property. Thus the landlord's property right not to have his reversion subjected to waste is fully protected. At the end of the term of any lease of a tenant who had obtained cable service, the landlord has the right to have the cables and fixtures removed from his property and have the property fully restored to its prior condition. The statute also provides numerous other safeguards for the benefit of the landlord. The landlord is not required to allow more than one cable service provider to provide service to tenants in an apartment building or complex. § 83.66(3), Fla. Stat. (1983). The statute provides means for the landlord to require the provision of service to be so arranged as to "maintain the aesthetic features of the site." Id. § 83.66(2).
Loretto is distinguishable because the law there was not found to create any right in the tenant appurtenant to the tenant's property rights in the premises. That is precisely what our law here provides for.
Section 83.66 is a valid regulation of the landlord-tenant relation in furtherance of the public welfare. It promotes and protects the interests of persons who rent their homes by enabling them to obtain the benefit of an important communications medium and does so by reasonable means. I therefore dissent.
NOTES
[*] Section 83.66 provides:

83.66 Right of tenant to obtain franchised or licensed cable television service. 
(1) No tenant having a tenancy of 1 year or greater shall unreasonably be denied access to any available franchised or licensed cable television service, nor shall such tenant or cable television service be required to pay anything of value in order to obtain or provide such service except those charges normally paid for like services by residents of, or providers of such services to, single-family homes within the same franchised or licensed area and except for installation charges as such charges may be agreed to between such tenant and the provider of such services.
(2) In determining whether to permit cable television service to a rental unit or complex, a landlord shall be authorized:
(a) To require that the cable television company submit to the landlord for approval detailed plans, specifications, and schematics for the proposed installation.
(b) To require that the installation of the cable be in harmony with the existing character of the complex and designed to maintain the aesthetic features of the site.
(3) Nothing herein shall be construed to require a landlord to permit more than one franchised cable television company to service the tenants residing in his rental units.
(4) Nothing herein shall be construed to require a landlord who has installed an independent television receiving unit, which provides a television signal comparable to cable for use by tenants, to accept installation and provision of cable television services from any cable television company.
(5) Any cable television company which is authorized to provide service to a rental unit or complex shall be responsible for paying to the landlord any costs, expenses, or property damage that are incurred by the landlord during the installation, repair, or removal of the cable. Payment of such amounts shall not be construed as a payment of value in order to obtain or provide cable television services.
(6) In the event a cable television company which has been authorized to provide services to a rental unit or complex fails to substantially comply with the plans, specifications, and requirements as agreed upon with the landlord, the landlord shall be authorized to require the immediate removal of all cable equipment. Failure to remove the equipment within a reasonable time period shall make the cable television company liable pursuant to the provisions of s. 810.08.
(7) Nothing herein shall be construed to supersede or in any way replace local cable television franchise agreements that provide stricter standards than those outlined in this section.
(8) A landlord may waive, in writing, all or part of the requirements of this section.