346 So.2d 556 (1977)
K.D. SAUDER et al., Appellants,
v.
HARBOUR CLUB CONDOMINIUM NO. THREE, INC., Appellee.
No. 76-1307.
District Court of Appeal of Florida, Second District.
April 15, 1977.
As Corrected On Denial Of Rehearing May 20, 1977.
*557 John S. Wagstaff, of Phillips, McFarland, Gould, Wilhelm & Wagstaff, P.A., Clearwater, and Adrian S. Bacon, of Bacon & Hanley, St. Petersburg, for appellants.
John T. Blakely, of Johnson, Blakely & Pope, P.A., and Robert R. Tench, Clearwater, for appellee.
GRIMES, Judge.
This is an appeal from a judgment cancelling a common and recreation areas use agreement between a condominium association and the developers.
In order to understand this complex litigation, it is necessary to recount the facts in some detail. The appellants (developers) *558 purchased a tract of waterfront land in Pinellas County. They conveyed portions of the land to three separate corporations of which they were the sole stockholders. Condominium buildings were built on each of the three parcels called respectively Harbour Club Condominiums No. One, Two and Three. Declarations of condominium ownership were filed with respect to each of the condominiums. The developers also organized three nonprofit corporations named Harbour Club Condominium No. One, Inc., Harbour Club Condominium No. Two, Inc. and Harbour Club Condominium No. Three, Inc., the members of which would consist of the unit owners in each of the condominiums.
The developers then entered into a service contract with each of the condominium associations in which it was agreed that for a stated fee the developers would provide specifically enumerated maintenance services for the benefit of the condominium. The developers also entered into separate common and recreation areas use agreements with each of the condominium associations, the terms of which will be discussed later. The various units in the condominiums were then purchased by those who became the members of the condominium associations pursuant to contracts which stated that the purchasers were subject to the provisions of the applicable service contract and common and recreation areas use agreement.
The total property included substantial landscaped areas, a swimming pool and shuffleboard courts. There was a recreation room in both Harbour Club Condominium No. One and Harbour Club Condominium No. Two but no recreation room in Harbour Club Condominium No. Three. It was contemplated by the developers that the residents of Harbour Club No. Three would use the recreation rooms in the other two condominium buildings. Accordingly, the three declarations of condominium provided that all common and recreation areas including those located within buildings were available to all the residents of the Harbour Club regardless of the building which they occupied. Some time thereafter, the owners of two units in Harbour Club Condominium No. Two brought suit against the developers and their development corporation seeking to quiet title to the recreation room in their condominium (suit 1).
The court held that the failure in the condominium documents to assign to the recreation room a percentage or fractional share of the common elements was a fatal defect in attempting to create the recreation room as a condominium unit subject to private ownership. Thus, the court held the recreation room to be part of the common elements which are fractionally owned by the various residents of Harbour Club Condominium No. Two and cancelled the purported conveyance of the recreation room back to the developers. This ruling was affirmed by our court in Daytona Development Corporation v. Bergquist, 308 So.2d 548 (Fla.2d DCA 1975).
In the meantime, Harbour Club Condominium No. Three brought this suit against the developers seeking to cancel its service agreement and common and recreation areas use agreement (suit 2). Then Harbour Club Condominium No. Two brought suit against the developers to cancel the service agreement and common and recreation areas use agreement applicable to that condominium (suit 3). Suits 2 and 3 were at first consolidated but they were later severed over the developers' objections. Following the taking of testimony in suit 2, the court held that the plaintiff had failed to carry its burden of proof with respect to the cancellation of the service contract. However, the court construed the common and recreation areas use agreement to be equivalent to a lease and ordered it to be cancelled. The court reasoned that because the developers did not own the recreation room in Harbour Club Condominium No. Two they were in no position to lease it and that since the recreation room was such a significant portion of the total recreation areas, the agreement must fall in its entirety. The developers appeal that aspect of the judgment *559 and also appeal the division of the monies which were paid under the common and recreation areas use agreement into the registry of the court during the pendency of the suit.
At the outset, the effect of suit 1 upon this case must be considered. While that suit held that the unit owners in Harbour Club Condominium No. Two, rather than the developer, held title to the recreation room, it did not pass upon the validity of the common and recreation areas use agreement applicable to that condominium. The question of whether the unit owners in Harbour Club Condominium No. Two had the right to use their recreation room to the exclusion of any of the other residents of the Harbour Club was never placed in issue. Therefore, as to that point there could be no estoppel by judgment. Gordon v. Gordon, 59 So.2d 40 (Fla. 1952). Moreover, the Harbour Club Condominium No. Three, Inc. was not a party to suit 1, so the identity of parties necessary to the application of res judicata or estoppel by judgment was not present. Matthews v. Matthews, 133 So.2d 91 (Fla.2d DCA 1961); Smith v. United Services Automobile Association, 259 So.2d 501 (Fla.1st DCA 1972).
We cannot quarrel with the court's observation that many of the provisions in the common and recreation areas use agreement resemble a lease. However, this agreement ought not be construed in a vacuum but should be considered in light of any other pertinent documents and the circumstances surrounding the parties. Blackhawk Heat. & P. Co., Inc. v. Data Lease Fin. Corp., 302 So.2d 404 (Fla. 1974); Quarngesser v. Appliance Buyers Credit Corp., 187 So.2d 662 (Fla.3d DCA 1966). Thus, paragraph 4.10 of each of the declarations of condominium defining "common and recreation areas" states:
"Those portions of the Harbour Club project whether specifically included in a building or being portions of the ground or improvements thereon outside the dedicated condominium parcel, title of which has been retained by the Developer, or others, and the use of which has been made available to all of the residents of the Harbour Club regardless of the building they occupy, said use being pursuant to either the Common and Recreation Areas Use Agreement or the Service Contract to the extent that either is applicable." (Emphasis supplied.)
Paragraph 4 of the common and recreation areas use agreements for all three condominiums reads as follows:
"(4) Overall Development Plan. The entering into of this Agreement is part of the overall plan for the development of Harbour Club, and it is anticipated that similar agreements of this type will be entered into by and between the other Condominium Associations located in Harbour Club, and with the Owner. The Association expressly consents to the entering into of other Agreements by Owner with other Condominium Associations for the use of the Common and Recreational Areas described herein." (Emphasis supplied.)
Paragraph 15 of each of the common and recreation areas use agreements provides as follows:
"(15) Automatic Consent and Ratification. Each and every person, whether real or corporate, who shall take any interest whatsoever in or to `The Harbour Club No. 3',[1] or any of the Apartments, or portions of the Condominium Property, after the recording of this Agreement as a part of the Declaration, by acceptance, delivery and the recording of the deed, contract, grant, assignment or other instrument granting, conveying or providing for such interest, or by the mere first exercise of the rights or uses granted herein, shall be deemed to consent to and ratify without further action being required, the provisions of this Agreement to the same effect and extent as if such *560 person or persons had executed this Agreement with the formalities required in deeds for the purpose of subordinating and/or subjecting such person or persons' interest, in full, to the terms of this Agreement and granting, creating, constituting, affirming and imposing, ab initio and anew, the lien rights granted to the Service Contractor and/or Owner provided for in this agreement."
Paragraph 28 of the same agreements says in part:
"... Association further covenants and agrees that it will use the said premises only for recreational purposes or for other uses consistent with the overall development plan of Harbour Club, and none other, without the prior written consent of the Service Contractor and owner obtained... ."
Finally, paragraph 40(D) of these agreements provides:
"D. Covenants Running with the Land.

All covenants, promises, conditions and obligations herein contained or implied are covenants for all of the above-described premises and covenants running with the lands described in the Declaration of the Condominium, and the same shall attach to and be binding upon the Service Contractor and Owner, their successors and assigns, and the Association, its successors and assigns, its present and future members, occupants, and present and future Owners of the Apartments in the Condominium, their personal representatives, successors and assigns."
It is evident that it was the intent of the developers and the associations with whom the agreements were entered into that the two recreation rooms in the Harbour Club would be available to each resident of the Harbour Club regardless of the building in which he lived. Thus, we conclude that the fact that the developers did not own the recreation room in Harbour Club Condominium No. Two did not mean that the unit owners in Harbour Club Condominium No. Three lost their right to use that recreation room. Therefore, they cannot escape their obligation to pay the developers what they agreed to pay them when they purchased their units, and the developers are entitled to a fee for this use even though they do not own the recreation room.
The case of Mayfair Engineering Co. v. Park, 318 So.2d 171 (Fla.4th DCA 1975), tends to support this conclusion. There, the developer of a condominium dedicated in the declaration of condominium thirty-five parking spaces which he declared to be part of the common elements but retained a reservation in the declaration to the use of these spaces by the developer or his assignee or others. The condominium association contended that upon the filing of the declaration of condominium title to the limited or common elements became vested in the unit owners and, therefore, since the developer was no longer the fee owner, he had nothing to assign or convey. In holding that the developer was entitled to collect rent for these parking spaces, the court said:
"Appellees, unit owners, contend that upon the filing of the Declaration of Condominium, title to the limited or common elements became vested in the unit owners and that therefore the developer was no longer fee owner and had nothing to assign or convey. While there is no question that ownership of the thirty-five parking spaces passed to the unit owners upon the filing of the Declaration, we find that that ownership was subject to the use restrictions set out in Article VIII of the Declaration of Condominium and that such restrictions are not prohibited by Florida's Condominium Act..."
Apropos to the instant case, the court of appeal concluded by stating:
"The unit owners knew or should have known of this reservation clause in Article VIII of the Declaration when they *561 purchased their condominium units and therefore were on notice then of their limited right and interest in the thirty-five parking spaces. Enforcement of the Declaration's terms thus cannot be said to work a hardship upon them... ."
The fact that we hold that the common and recreation areas use agreement should not have been cancelled does not necessarily dispose of the question of what to do with the rentals paid under that agreement into escrow while this suit was pending. The testimony clearly shows that subsequent to the judgment in suit 1 the management of Harbour Club Condominium No. Two, Inc. locked out the unit owners of Harbour Club Condominium No. Three from the use of the recreation room. While the unit owners in Harbour Club No. Three may have had a theoretical right to use the room, as a practical matter, they were unable to do so.[2] There was considerable testimony that the availability of the recreation room was the most important feature of the overall recreation area to the unit owners in Harbour Club Condominium No. Three. Consequently, the court returned to the unit owners of Harbour Club Condominium No. Three a larger portion of the rentals than they would have received had the division been accomplished in proportion to the appraised value of the recreation room as compared to the appraised value of the balance of the recreation areas. Such a determination was well within the discretion of the court, and we approve the division of these rentals.
We recognize that because of the posture of this case we have necessarily had to address ourselves to certain rights of Harbour Club Condominium No. Two, Inc. even though that association is not a party to this suit. This might have been avoided had suits 2 and 3 remained consolidated. Be that as it may, since our decision cannot have the effect of res judicata or estoppel by judgment upon Harbour Club Condominium No. Two, Inc., it is obvious that our resolution of this particular battle is not going to end the war. However, we do see a light at the end of the tunnel, because we have been apprised in a supplemental brief that Harbour Club Condominium No. Two, Inc. and the developers have now settled suit 3 pursuant to an agreement whereby, in consideration of the reduction of rentals paid by Harbour Club Condominium No. Two, Inc. under its common and recreation areas use agreement and other concessions by the developers, the unit owners in Harbour Club Condominium No. Three will be permitted to use the recreation room in Harbour Club Condominium No. Two. We, therefore, remand this case for a further hearing in which the court may consider the effect of this settlement agreement and make such reductions in the rentals due under the common and recreation areas use agreement of Harbour Club Condominium No. Three as may be necessary to offset any expenses which the unit owners in Harbour Club Condominium No. Three may incur to Harbour Club Condominium No. Two, Inc. by virtue of their use of the recreation room under the settlement agreement and for such other ancillary matters as may be necessary to terminate this litigation.
AFFIRMED in part; REVERSED in part; and REMANDED.
BOARDMAN, C.J., and OTT, J., concur.
NOTES
[1] The club number is designated as 1, 2 or 3 depending upon which Harbour Club was party to that particular use agreement.
[2] The record does not adequately reflect the status of the recreation room in Harbour Club Condominium No. 1. Apparently, because of its location and size, its use was not desirable for the unit owners of Harbour Club Condominium No. 3.