LETTS, Chief Judge.
Pursuant to a dispute between a particular condominium association and the developer of the entire complex, the trial court held the latter liable for repair of the tennis courts under Section 718.203(1)(c), Florida Statutes (1979). We affirm.
The trial court also held the developer/lessor entitled to receive continued lease payments (subject to a pro rata offset) from twelve owners who signed a “lease agreement” to pay him rent for the recreational facilities prior to the recording of the declaration designating them to be common elements. We reverse this second holding.
The developer claims that the trial court erred in determining that he was responsible to pay for repairs to the condominium’s tennis facility. Under Section 718.203(1)(c), a developer is deemed to have granted a three year implied warranty of fitness, commencing on the date of the completion of such an improvement. However, this warranty is released if the association fails to perform routine maintenance on the *474 improvement. See Section 718.203(4). In the instant case, construction of the tennis court facility, which became part of the common elements, was completed in August 1978. When the association took control of the condominium in January 1980, cracks had already developed on the surface of the courts. Although the developer maintains that the association failed to perform routine maintenance on those courts, the record indicates that this type of hard asphalt court does not require maintenance if properly constructed. There is substantial competent evidence to support the theory that the cracks which appeared had no connection with lack of maintenance and occurred because the soil underneath the tennis courts settled as a result of improper drainage and an inadequate foundation. This being so we cannot substitute our judgment for that of the trial court.
The second issue before us is raised by the cross appeal. In essence, before the filing of the declaration of condominium, or its applicable amendment, the developer, who then still owned much of the entire complex, entered into a lease with twelve. contract purchasers in one specific building under which they would each pay $18 per month rent to the developer in return for use of the recreational facilities constructed in another building. Subsequently, these recreational facilities became part of the common elements of the other building when the declaration was recorded and as a consequence, title thereto passed to the unit owners at that time. Nonetheless, the developer is claiming continued entitlement to the rentals because of the prior lease agreement between himself as lessor and the twelve individual owners affected. On the other hand, the association claims those rents now belong to them.
The trial court found that the developer was entitled to continuation of the rents because all other purchasers were on notice of this lease by reason of a clause in a survey attached to the amended declaration, of which they were all given a copy. We agree that everyone was put on notice of the right of these twelve owners to use the clubhouse and pool and we uphold their right to continue to do so. We do not agree that the developer is entitled to a continuation of the rents, which we now hold by operation of law should properly be paid to the association.
Other than statutory limitations, there is nothing in the law which prohibits a developer from retaining the right to impose use restrictions upon common elements. However, that right must be expressly reserved in the declaration. Mayfair Engineering Co. v. Park, 318 So.2d 171 (Fla. 4th DCA 1975). The declaration sub judice reserved the right of the twelve unit owners from another building to use the recreation facilities, but it failed to specifically reserve rents to the developer and this failure clearly prevents the developer from being entitled to same. In Gray v. Callahan, 143 Fla. 673, 197 So. 396 (1940), the landlord conveyed property under lease and there arose a dispute as to who was entitled to the rent accruing thereafter. The Florida Supreme Court stated on page 197 So. 398:
The effect in general of a conveyance of the reversion is well expressed in 16 R.C.L. 641, as follows:
“After a landlord has transferred his reversion, all privity of estate between himself and his lessee is terminated, and his right to enforce covenants and agreements on the part of the lessee, not broken at the time of the transfer and which run with the reversion ceases; the right to enforce such agreements is then vested in the transferee of the reversion. Thus the right to rent accruing after the transfer of the reversion passes to the transferee, and the original lessor has no right to maintain an action against the lessee to recover the same, though he has expressly covenanted or agreed to pay rent to the lessor. The transferor of the reversion may, however, after the transfer, maintain an action upon the lessee’s contract to pay rent, if the same had fully accrued prior to the transfer, and he may in the transfer expressly reserve the rent for part of all of the term granted by the *475 lease, in which case he may sue the lessee upon the contract the same as if there had been no transfer.”

As the deed from Collins, Gray’s former landlord, to Acor, Inc., contained no reservation of rents accruing thereafter, it amounted to a relinquishment by Collins of his rights to subsequently accruing rentals to his grantee, and the conveyance of the reversion by Acor, Inc., to Mrs. Callahan had the same effect. (Emphasis added).
The association admits that all individual purchasers of condominium units were advised in writing of the existence of the pre-existing recorded lease between the developer and the twelve unit owners. That advice, on a survey attached to the amended declaration, reads as follows:
Developer reserves the right to assign dock spaces to individual condo unit owners; clubhouse and pool area shall be shared with twelve condominium owners from Harbour Hall Condominium Number Two per lease agreement, so on and so forth, according to the official record book, 2030, page 382.
However this reservation does not speak to retention of rental payments. A mere conveyance made subject to an existing lease does not result in a reservation of rent unless it specifically says so. The developer cites us to the case of Sauder v. Harbour Club Condominium No. Three, Inc., 346 So.2d 556 (Fla. 2d DCA 1977), in support of his position and we agree it presents an analogous situation. Nonetheless, a close reading of that opinion does not reveal specific discussion of the question of reservation of rental payments after recordation of the declaration. Notwithstanding, if in fact there was such a reservation, we must respectfully disagree with Sauder.
AFFIRMED IN PART, REVERSED IN PART.
HERSEY and HURLEY, JJ., concur.