433 So.2d 998 (1983)
STAR ISLAND ASSOCIATES, a General Partnership, and Citicorp Real Estate, Inc., a Delaware Corporation, Appellants,
v.
CITY OF ST. PETERSBURG BEACH, Florida, for Itself and As Successor in Interest to the Long Key Sewer District, Appellee.
Nos. 82-1696, 82-1904.
District Court of Appeal of Florida, Second District.
May 27, 1983.
Rehearing Denied July 7, 1983.
*1000 Guy M. Burns of Jacobs, Robbins, Gaynor, Hampp, Burns, Cole & Shasteen, P.A., St. Petersburg, for appellants.
Gerald R. Colen of Devito, Forlizzo & Reese, St. Petersburg, for appellee.
LEHAN, Judge.
Star Island Associates, a general partnership, and Citicorp Real Estate, Inc. appeal from a summary final judgment granted to the plaintiff, City of St. Petersburg Beach (hereinafter the "City"), on the issue of whether the City has an easement over property owned by Star Island. Citicorp holds a mortgage on a portion of the affected property. We reverse and remand for further proceedings.
The City filed suit seeking declaratory relief principally in the form of a 60-foot wide easement through approximately the middle of property owned by Star Island on which Star Island was constructing a condominium development. The City's amended complaint requested relief under one or more of the following five theories: (1) express easement by grant; (2) express easement by deed; (3) express or implied dedication; (4) implied grant by way of necessity; and (5) estoppel to deny dedication. In the summary judgment for the City, the trial court found that over a particular portion of the property (1) a public road existed, (2) a private road existed by virtue of an express grant to the City by Star Island's predecessors-in-title, and (3) a way of necessity existed.

FACTS
The property in dispute is situated in Pinellas County on a finger of land jutting in a northerly direction off the causeway that runs from Pasadena Avenue to St. Petersburg Beach. At the northerly tip of the finger the City owns land on which it operates a sewage treatment plant. Star Island owns ll the land between the City's property and the causeway.
Prior to the 1950's, this finger of land did not exist. The entire area was submerged except for a mangrove clump and a few sandbars. The City of St. Petersburg Beach did not exist either. Various small municipalities were located on Long Key, *1001 where the City now exists. To provide sewer services for these municipalities, the Long Key Sewer District ("LKSD") was formed. The LKSD acquired title in 1955 and 1956 to certain of the submerged land and began filling it to build a sewage treatment plant there.
In the early 1950's, most of the property that Star Island now owns consisted of two parcels owned by Gerald and Gladys Matthews and by Dr. McEwan. The Matthews tract lay east of the McEwan tract, and both parcels adjoined the LKSD property on their northern boundaries. In 1956 the LKSD made an agreement with the Matthews, who were planning to fill their submerged property. This agreement, known as "the Matthews agreement," was recorded in the public records of Pinellas County. Among other things, the Matthews agreement made provision for connecting the Matthews and LKSD parcels of land, which were to occupy neighboring islands, to each other by a causeway. Paragraph 5 of the agreement also provided, "so that the District [LKSD] may have land access to the sewer plant, Matthews agrees that upon construction of the Matthews fill, Matthews shall allow the District to have ingress and egress over the streets of the Matthews fill without cost to the District." At the time of this agreement, neither the LKSD parcel nor the Matthews parcel had any land access to the mainland or to Long Key.
In 1958 ownership of the Matthews property and also the adjacent McEwan property was transferred to Leslynn, Inc., which conducted fill operations. Unrecorded agreements were entered into in 1958 and 1964 between Leslynn and LKSD pertaining to roadways and access across the Leslynn fill. The 1958 agreement provided that, after completion of bridges from the fills to Long Key or to the mainland, Leslynn would provide "service access" across the Leslynn fill to the sewer plant site. The agreement also provided that, after the Leslynn fill was platted, Leslynn would dedicate a road right-of-way and construct a road thereon. The Leslynn fill, however, was never platted.
In the 1958 agreement, LKSD agreed to convey to Leslynn a portion of the causeway, to run in a generally north-south direction, that would connect the Leslynn fill to the LKSD fill. In the 1964 agreement, however, the parties agreed that the eastern part of the causeway would be conveyed by LKSD to Robert E. Lee Company ("Lee") which had done work for Leslynn, instead of to Leslynn as previously agreed. LKSD deeded the western half of the causeway to Leslynn and the eastern half to Lee. These deeds each reserved to LKSD a 25-foot easement which combined to form a 50-foot easement down the approximate center of the causeway.
The City of St. Petersburg Beach became the owner of the LKSD property in 1966 and took over the operation of the sewer plant. Also in that year the first permanent land access to the two islands became available because of the construction of a new causeway connecting the City of South Pasadena to the City of St. Petersburg Beach. The new causeway crossed the south end of the Leslynn parcel, and vehicles traveled from that causeway to the sewer plant via a dirt path on the eastern edge of the Leslynn fill and then across the causeway between the two islands which had made the islands, in effect, one island.
In early 1968 an easement over the Leslynn property was given to the City of St. Petersburg (not Appellee City of St. Petersburg Beach) for the purpose of installing and maintaining water lines and other utilities. The easement was given because in 1967 all of the island, except the sewer plant site, had been annexed to the City of South Pasadena, which acquired its utility services from the City of St. Petersburg. The easement transgresses the Leslynn fill in a north-south direction and connects with the above-mentioned 50-foot easement reserved by LKSD on the causeway portion of the property connecting the formerly separate islands.
Later in 1968 the Leslynn property was distributed to Leslynn shareholders by deeds from the First National Bank of St. Petersburg, as Trustee. The deed for the *1002 parcel on the west side of the causeway connecting the formerly separate islands was made subject to, and specifically refers to, the existing 25-foot easement previously reserved to LKSD. The southern portion of the island (the former McEwan and Matthews tracts) was deeded by First National Bank to two grantees. Each of the two deeds recited that the conveyance was "subject to a road easement" of 30 feet. The deeds do not refer to any prior instrument purporting to create such an easement, nor do the deeds identify the location of the easement.
In 1969, pursuant to the easement given in the 1968 utility easement agreement, the City of St. Petersburg installed a water line along that easement. After that water line installation was completed, vehicles began using the pathway created by the installation because it provided a more direct route between the sewer plant site and the access point from the new causeway on the south end of the island. Vehicles also continued to use the path on the eastern edge of the island.
In 1973 the City and another owner of land on the island agreed to pave the 50-foot easement on the northern portion of the island (the causeway connecting the former two islands). The city also graded the utility easement on the southern part of the island and covered that pathway with a shell base. The City began using that road to move heavy equipment over the island to be stored on the sewer plant site.
In 1979, when Star Island acquired virtually all the property on the island except the sewer plant site, two routes of access to the sewer plant were evident  one running along the eastern edge of the island and the other running down the approximate center of the island over the utility easement.
Star Island began development of a luxury condominium project on the island. The City then filed this action seeking declaratory relief to establish an easement across Star Island's property to the sewer plant site. Star Island does not dispute the existence of a 50-foot easement over the northern "causeway" portion of the island, as created in the deeds from LKSD to Lee and Leslynn. The only dispute is about the City's right of access across the southern portion of the island (the former McEwan and Matthews tracts).
In its final summary judgment the trial court awarded the City access across Star Island's property based upon findings of the existence of a private road, a public road, and a way of necessity. The court found that all three ran over the land described in the 1968 utility easement given to the City of St. Petersburg. Each of the three theories are hereinafter discussed separately. In addition, we discuss what we view as controlling aspects of the Matthews agreement. Although we cannot affirm on any of the three theories used below, we find that the Matthews agreement did give rights of access over the Star Island property to LKSD and its successor, the City of St. Petersburg Beach.

WAY OF NECESSITY
To prove an easement of necessity, the claimant must show that (1) the two parcels of land (here the sewer plant property and the Star Island property) derive from a common grantor; (2) the only practical and reasonable means of ingress from a public road to the claimant's (the City's) land is across the property of which it was once a part; (3) the action of the common grantor in dividing his property created the circumstances referred to in (2); and (4) the requested means of access to a public road existed at the time of conveyance from the common grantor. See § 704.01(1), Fla. Stat. (1981); Hanna v. Means, 319 So.2d 61 (Fla. 2d DCA 1975). In the instant case, requirements (3) and (4) cannot be proven because the facts show that, even after the sewer plant property and the Star Island property had existed as separate parcels (the LKSD parcel and the Matthews/McEwan parcel), all that land continued to be located under water. Thus, at the time one of those separate parcels was conveyed from a common grantor (which conveyance is not shown by the record before us), the requested access across Star Island's property did *1003 not exist. Nor could the division of the land have created the City's need for access across Star Island's property because at the time of separation the only access to the City's property was by boat.
For similar reasons, the City is not entitled to an implied easement, a doctrine closely related to way of necessity principles. The doctrine of implied easement is that when a landowner conveys part of his land, he impliedly grants all apparent or visible easements upon the part retained which were at that time used by the grantor for the benefit of the land conveyed and which were reasonably necessary for use of the land conveyed. Dinkins v. Julian, 122 So.2d 620 (Fla. 2d DCA 1960). Because the evidence in this case shows that the land was submerged even after the parcels initially had been conveyed to separate owners, no implied easement was created because no part of the submerged land could have been used for the benefit of another part of the submerged land.

PUBLIC ROAD
A roadway can become dedicated to public use under a theory of either common law dedication or statutory dedication. Common law dedication requires proof of (1) an intention by the landowner to dedicate the property to public use and (2) an acceptance by the public. Bishop v. Nussbaum, 175 So.2d 231 (Fla. 2d DCA 1965). Proof of the intention to dedicate and of the acceptance must be clear and unequivocal, and the burden of proof is on the party claiming the dedication. Roe v. Kendrick, 146 Fla. 119, 200 So. 394 (1941). We do not find that there was any common law dedication in the case at bar. No dedication to the public appears on any plat or recorded map or in any recorded agreement. Nor can we say that the facts of this case unequivocally show the required intent to dedicate or an acceptance by a public authority. See City of Miami Beach v. Miami Beach Improvement Co., 153 Fla. 107, 14 So.2d 172 (1943); City of Palmetto v. Katsch, 86 Fla. 506, 98 So. 352 (1923).
Requirements for a statutory dedication are contained in section 95.361(1), Florida Statutes (1981). That section provides that if a road constructed by a municipality has been maintained or repaired continuously for four years by the municipality, the road shall be deemed dedicated to the public, and title to the road will vest in the municipality, "if it is a municipal street or road." The City in this case contends that it constructed and maintained the disputed roadway because it graded the path on the utility easement and put shell on it. Although arguably those facts may not support a showing of road construction within the meaning of section 95.361, see St. Joe Paper Co. v. St. John's County, 383 So.2d 915 (Fla. 5th DCA 1980), petition for review denied, 388 So.2d 1118 (1980), we need not decide that issue because we cannot find that the legislative intent behind section 95.361 was to allow a municipality to claim by dedication land that is located in another municipality. We cannot construe the language of section 95.361(1)(b), which allows title to a road to vest in a municipality if the road is a municipal road to mean that the claimed road may lie outside the boundaries of the claiming municipality. Here the property claimed by the City of St. Petersburg Beach lies within the City of South Pasadena, and there can be no statutory dedication.

PRIVATE ROAD
The trial court found that a private road existed over the stretch of land described in the 1968 utility easement given to the City of St. Petersburg. We hold, however, that that document did not create a road easement in favor of the City of St. Petersburg Beach. A person granting an easement may restrict the easement in any way he wishes, and the easement holder cannot expand the easement beyond that contemplated at the time it was granted. Kendry v. State Road Dept., 213 So.2d 23 (Fla. 4th DCA 1968), cert. denied, 222 So.2d 752 (1969). The evidence in the instant case, including the face of the 1968 easement, shows that the grantor intended only to allow access to the City of St. Petersburg *1004 to supply water and utility services. The agreement does not contemplate roadway access.
The 1968 deeds from the First National Bank of St. Petersburg, as Trustee, refer to road easements. As mentioned above in this opinion, the property at the northerly end of the island is subject to a 50-foot road easement reserved by LKSD, which Star Island does not dispute. The deeds for the property on the southerly end of the island, however, merely recite that they are subject to a road easement. The general rule is that the words "subject to" in documents on which an attempt to create an easement are based are words of qualification, not words of contract; at best they create an ambiguity to be resolved by determining whether the intention of the parties, in light of surrounding circumstances and agreements, was to create an easement. Procacci v. Zacco, 324 So.2d 180 (Fla. 4th DCA 1975). In the instant case, the City has not submitted any evidence to show that the First National Bank, as grantor, or any of its predecessors-in-title, intended to create a road easement over the subject strip of property for the benefit of the City or LKSD. The 1968 deeds to the southerly property do not refer to any other recorded instruments that specifically create the easement, nor does the evidence suggest the existence of any such documents. The Leslynn agreements refer to access and a road easement, but no description of a specific easement is included and those agreements were never recorded. The recorded Matthews agreement refers to access and to rights of ingress and egress and gives the City certain rights (discussed more fully below), but does not purport to delineate an easement of the type referred to in the 1968 deeds. The evidence does not support a finding that a private road easement exists over the land described in the 1968 utility easement agreement.

MATTHEWS AGREEMENT
The Matthews agreement states that LKSD (the City's predecessor-in-title) will have the right to ingress and egress over streets of the Matthews fill. The Matthews fill currently constitutes a portion of Star Island's property. The Matthews agreement was recorded, and the evidence indicates that Star Island had actual as well as constructive notice of the document. No attack has been made on the validity of the agreement. Star Island has not shown why it is not bound by the access provisions of the Matthews agreement. Accordingly, we hold that Star Island is required to allow the City some rights of ingress and egress over the streets of that portion of Star Island's property which is comprised of the former Matthews fill referred to in the agreement dated February 14, 1956 and recorded in the public records of Pinellas County at O.R. Book 1582, pages 180-183.
We further hold, however, that the City's rights of ingress and egress, including rights pertaining to the type and amount of vehicular traffic, are limited to those within the intentions of the parties signing the 1956 Matthews agreement. As we have noted above, the Matthews agreement shows no intention to dedicate a public or private roadway across the Matthews fill; if such a dedication had been made, of course, no limitation could be placed on the use of the road. Easements of the type contemplated by the Matthews agreement are governed by the principle that "the burden of a right-of-way upon the servient estate must not be increased to any greater extent than reasonably necessary and contemplated at the time of the initial acquisition." Crutchfield v. F.A. Sebring Realty Co., 69 So.2d 328, 330 (Fla. 1954); Groff v. Moses, 344 So.2d 951 (Fla. 2d DCA 1977). In Crutchfield, the Florida Supreme Court found that an easement given for irrigation purposes at a time when irrigation was accomplished by hauling water in barrels on a wagon pulled by a mule did not allow the installation of modern large-scale irrigation equipment.
At the time the Matthews agreement was signed, LKSD was an entity formed for the limited purpose of constructing a sewer treatment plant and providing sewer services to various Pinellas County towns. The *1005 Matthews agreement specifically refers to the plans of LKSD to construct a sewer plant. It is reasonable to assume that the parties to the agreement had in mind allowing only access of the type necessary to facilitate LKSD's operation of a sewer plant on its property. That type of access might be substantially different from the access contemplated if a municipality had been a party to the agreement. A person who grants access to a municipality might conceivably have contemplated that in the future the municipality could use its property for activities of a type different from a sewer plant, such as a garbage dump or a beach, generating amounts and types of traffic different from that which would be expected from a sewer plant. But no municipality was a party to the Matthews agreement.
It is not the province of this court under the record before us to delineate in more detail the characteristics of the easement, e.g., the permissible extent and type of use. This lawsuit was instituted through the City's request for a declaration that the City possesses an easement across Star Island's property. For the foregoing reasons, we do not find that the City is entitled to the specific easement that it requested. Yet we feel an issue still existed as to the entitlement of the City to some easement. We have addressed that issue, which we consider as the sole remaining controversy before us, by agreeing with the trial court that the City is entitled to relief but only to the extent that the City has a limited right of access across a certain portion of Star Island's land.
We remand the cause to the trial court for such other determinations as may be within the parameters of the relief prayed for. For that purpose interpretation by the trial court of the intentions of the parties to the Matthews agreement would be appropriate. This would include determinations of the extent of the burden which can be placed on Star Island's property and of the current location of access. Consideration should be given to whether the fluidity of the situation at the time of the Matthews agreement indicates that a permanently fixed route was not contemplated.
REVERSED AND REMANDED FOR PROCEEDINGS CONSISTENT HEREWITH.
OTT, C.J., and CAMPBELL, J., concur.