IN THE SECOND DISTRICT COURT OF APPEAL, LAKELAND, FLORIDA

July 15, 2015

LOUIS A. FIORE and JEAN H. FIORE,    )
                                     )
          Appellants,                )
                                     )
v.                                   )          CASE NO. 2D14-1872
                                     )
RICHARD O. HILLIKER,                 )
                                     )
          Appellee.                  )
_____)

BY ORDER OF THE COURT:

          Upon consideration of Appellee's motion for rehearing and motion for

rehearing en banc,

          IT IS ORDERED that the Appellee's motion for rehearing is granted in part

to the extent that we are withdrawing the prior opinion dated March 13, 2015, and the

attached opinion is substituted therefor.  The remaining issues in the motion for

rehearing and the rehearing en banc are denied.  No further motions for rehearing will

be entertained.

I HEREBY CERTIFY THE FOREGOING IS A
TRUE COPY OF THE ORIGINAL COURT ORDER.


JAMES R. BIRKHOLD, CLERK

cc:  Andrew I. Solis, Esq.
     J. Matthew Belcastro, Esq.
     Clerk of Court

LOUIS A. FIORE and JEAN H. FIORE, )
)
      Appellants, )
)
v. )      Case No. 2D14-1872
)
RICHARD O. HILLIKER, )
)
      Appellee. )
)
_____ )

Opinion filed July 15, 2015.

Appeal from the Circuit Court for Lee County;
Michael T. McHugh, Judge.

Andrew I. Solis of Cohen & Grigsby, P.C.,
Naples, for Appellants.

J. Matthew Belcastro of Henderson, Franklin,
Starnes & Holt, Fort Myers, for Appellee.


DAVIS, CHARLES A., Senior Judge.

        Louis A. Fiore and his wife, Jean H. Fiore, challenge the declaratory

decree entered by the trial court in favor of Richard O. Hilliker subsequent to the trial

court's granting of Hilliker's motion for summary judgment.  The resulting final judgment

determined that Hilliker's property was no longer subject to certain deed restrictions of

record.  We reverse.

Prior to 1985, the properties now owned by the Fiores and Hilliker were both owned by James D. Spivey. In addition to these two parcels, Spivey owned a large tract of adjacent land. This adjacent property was developed by Spivey as The Shallows subdivision. In April 1984 Spivey recorded in the public records a document entitled "The Restrictions As To Use" for The Shallows (the Shallows' restrictions).

In 1985 Spivey contracted to sell the Hilliker property to Robert and Anne Sonn, Hilliker's predecessors in title. Specifically, Spivey conveyed to the Sonns the parcel in dispute as well as lot 11 of The Shallows subdivision. The deed stated that the conveyed property, including both the separate parcel and lot 11, was subject to the restrictions described in an attached schedule B. Schedule B specifically provided that the use of the conveyed property would be restricted to single-family residential and that the property would be "subject to the Restrictions of The Shallows as recorded in O.R. Book 1722 at Page 225, Public Records of Lee County, Florida." The originally recorded language in the Shallows' restrictions provided that the restrictions would "extend for a period of twenty (20) years from the conveyance or grant herein." In 1986 Spivey sold the adjoining property to the Fiores.

In 1989 an amendment to the Shallows' restrictions was recorded in Lee County and purported to extend its applicable time for an additional ten years. In 1998 the Sonns conveyed their property (the disputed parcel and lot 11) to Hilliker subject to the restrictions "of record."

The Fiores filed an action in 2002 to enforce certain restrictions and enjoin Hilliker from acting in a manner not allowed by the schedule B restrictions, and Hilliker contested the application of the restrictions to that portion of his property which was not

part of The Shallows subdivision. The trial court ruled in 2010 that the schedule B restrictions applied as they were referenced and included in the Spivey-to-Sonn deed conveyance of the Hilliker property. Hilliker was enjoined from further violation of the schedule B restrictions, which included the Shallows' restrictions by incorporation. This court affirmed that ruling in Hilliker v. Fiore, 75 So. 3d 1256 (Fla. 2d DCA 2011) (table decision).

Thereafter, a dispute arose between the Fiores and Hilliker over the height of the hedge that separated their adjoining properties. The Shallows' restrictions governed the height and nature of the hedges allowed along the waterfront. On June 3, 2013, Hilliker filed the instant petition for declaratory decree, asking that the trial court rule that the Shallows' restrictions no longer encumbered his property because the twenty-year limit specified in the original restrictions had expired in 2004, two years after the filing of the first enforcement action. Hilliker further alleged that the 1989 amendment to the Shallows' restrictions extending that term was not applicable to his property because the Shallows' restrictions were not amended until after the 1985 Spivey-to-Sonn deed conveyance.

Hilliker moved for summary judgment, and a hearing was held on the motion on December 9, 2013. On December 17, 2013, the trial court entered its order granting the motion for summary judgment. It then entered a judgment reflecting that the Hilliker property was no longer subject to the Shallows' restrictions. The trial court cited Greenbriar Condominium Apartments II Ass'n v. Koch, 480 So. 2d 131 (Fla. 2d DCA 1985), in concluding "that the Amendment to the Shallows Restrictions recorded at O.R. Book 2073, page 1753, Official Records of Lee County, does not apply to the

Hilliker Property or otherwise serve to extend the Shallows' restrictions as to the Plaintiff's property."

At the summary judgment hearing, the Fiores argued that because the Shallows' restrictions as originally filed contained language in paragraph 25 that contemplated future amendments to the terms of the restrictions and because schedule B incorporated that language by reference at the time of the Spivey-to-Sonn deed transfer, the Hilliker property is subject to the ten-year extension amendment just as it was previously determined to be subject to the schedule B and the Shallows' restrictions in 2010. In support of this argument, the Fiores argued that the instant case was factually similar to and controlled by Angora Enterprises, Inc. v. Cole, 439 So. 2d 832 (Fla. 1983).

Conversely, Hilliker argued that the situation was more akin to Greenbriar, 480 So. 2d 131, where there was no language in the deed of conveyance or schedule B that demonstrated an intent to incorporate future amendments to the Shallows' restrictions. The language at issue is contained in paragraph 25 of the Shallows' restrictions. In relevant part it states that "[t]he Grantor or its successor reserves the right to hereafter, from time to time, amend, modify, add, delete or grant exceptions from any or all of the foregoing restrictions without notice to or consent from the Grantee."

Although both Greenbriar and Angora are relevant to an analysis of the issue the trial court faced here, neither case provides a complete basis upon which the trial court could rely in rendering a decision at the summary judgment hearing. In Greenbriar, the question of the applicability of later-adopted amendments was

considered in the context of a dismissal of a complaint based on the plain language of the contract. 480 So. 2d at 132-33. When the twelve condominiums involved in that case were created, the declarations of condominium included language stating that the declarations were being enacted pursuant to the Condominium Act of Florida, section 718.401(8)(a), Florida Statutes (1983). Additionally, when the condominium associations were created, the associations and grantors entered into certain ground leases for the use of the property designated as recreational property. The ground leases included rent escalation clauses that automatically increased the rents based on the cost of living index. 480 So. 2d at 132.

In 1975 the legislature amended the Condominium Act and determined that such escalation clauses in leases were against public policy. Then, in 1984, the declarations of condominium were amended to provide that they were established pursuant to the Condominium Act "as the same has been and may be amended from time to time." Id.

The twelve condominium associations filed a declaratory action, seeking a determination that the escalation clauses in the leases were not enforceable based on the 1975 amendment to the Condominium Act. They argued that the ground leases incorporated by reference the provisions of the declarations of condominium and that because the declarations of condominium were eventually amended to contemplate any amendments to the Condominium Act, the ground leases should be governed by the amended statute. Id.

This court affirmed the trial court's dismissal of the declaratory action as a matter of law based on the express language of the ground leases. Id. at 133. The

1975 amendment to the Condominium Act did not apply to the leases in Greenbriar because the declarations of condominium that existed at the time the ground leases were executed did not include the provision acknowledging the applicability of future amendments to the Condominium Act. Id. at 132-33. Furthermore, the amendment to the declarations of condominium—which did acknowledge incorporation of changes to the law—occurred only by way of a unilateral amendment enacted by the condominium associations after the ground leases were signed. Id. at 133. And there was nothing in the express language of the ground leases that indicated that both parties intentionally agreed to future unilateral amendments. Id. Thus, while this court in Greenbriar concluded that the parties to the contracts at issue did not agree to future unilateral amendments to documents incorporated by reference, we specifically declined to address whether parties to a contract may expressly agree to be bound by future unilateral amendments to incorporated documents. Id.

In Angora, 439 So. 2d at 832-34, a case cited repeatedly in Greenbriar, Angora Enterprises developed the Lakeside Village Condominiums prior to the 1975 amendment to the Condominium Act regarding rent escalation clauses. The originally recorded declaration of condominium incorporated the Condominium Act by reference and defined it as including future amendments. Id. at 834. The declaration also was incorporated by reference into the terms of the lease by the developer, the condominium association, and the unit owners. Id. After disputes regarding the rent escalation clauses in the individual leases arose, a series of complaints regarding their validity were filed and rents were paid into the court registry. The trial court dismissed the complaints and also addressed the disbursement of the rent payments that had

been collected into the registry. Id. On appeal, the Fourth District affirmed in part and reversed in part, specifically concluding that the amendment to the Condominium Act that occurred after the Declaration of Condominium and the recreational leases were signed by the parties was enforceable because the declaration and leases incorporated each other as well as the Condominium Act and its future statutory amendments. Cole v. Angora Enters., Inc., 403 So. 2d 1010, 1011-12 (Fla. 4th DCA 1981), aff'd, 439 So. 2d 832. When the Florida Supreme Court addressed the certified questions framed by the Fourth District on this issue, it determined "that the parties intended to be bound by future amendments to the condominium act and [that] as such [the amendment to the act] is applicable and enforceable under the facts of the instant case." Angora, 439 So. 2d at 834.

The reasoning employed in Greenbriar and Angora is useful here because it recognizes that the issue to be resolved is the contracting parties' intent regarding the inclusion of future amendments. In both cases, such intent or lack thereof was apparent from the contractual language. See Angora, 439 So. 2d at 834 (finding that the plain language of the contract expressly included the incorporation of future statutory amendments and concluding "that the parties intended to be bound by future amendments to the condominium act and [that] as such [the amendment to the act] is applicable and enforceable under the facts of the instant case"); Greenbriar, 480 So. 2d at 133 ("Simply from the incorporation of the declarations into the ground leases, we do not perceive in the ground leases an intention of the parties that the ground leases may be unilaterally amended by the associations."). This allowed both cases to be addressed as issues suitable for dismissal by the trial courts, meaning neither case

considered the issue within the context of a summary judgment hearing. Such was appropriate in those cases only because there were no factual issues raised regarding any ambiguities in the language of the <u>Greenbriar</u> and <u>Angora</u> contracts.

In the instant case, whether the amendment to the Shallows' restrictions would apply and thereby extend the term length of the hedge-height restriction on Hilliker's property turns on the intent of James Spivey and Robert and Anne Sonn at the time of their deed conveyance, which incorporated by reference the Shallows' restrictions. But Hilliker and the Fiores maintain a material factual dispute as to the intent of Spivey and the Sonns with regard to future unilateral amendments to the Shallows' restrictions. Specifically, Hilliker and the Fiores disagree over whether the language of paragraph 25 was incorporated by reference and whether it included authority to extend the effective time of the restrictions on the Hilliker property. Unlike <u>Greenbriar</u> and <u>Angora</u>, these factual disputes were not resolvable by the express language of the agreement.

Nevertheless, in the final judgment, the trial court relied on <u>Greenbriar</u> to conclude that as a matter of law, the restrictions did not apply to Hilliker's property. To reach this conclusion, the trial court necessarily determined that like in <u>Greenbriar</u>, the contractual language in the instant case shows that the parties did not agree to be bound by future amendments to the incorporated documents. This was therefore an erroneous determination on a disputed factual issue—the intent of the contracting parties. Such a finding of fact regarding ambiguous terms in a contract is not permitted at the summary judgment stage of the proceeding. See <u>Palm Beach Pain Mgmt., Inc. v. Carroll</u>, 7 So. 3d 1144, 1145-46 (Fla. 4th DCA 2009) ("If a contract's terms are clear and

unambiguous, the language itself is the best evidence of the parties' intent and its plain meaning controls, warranting summary judgment. If, however, there are two reasonable interpretations of a contract, summary judgment is inappropriate because there is a genuine issue of material fact." (citation omitted) (internal quotation marks omitted)).

Accordingly, we reverse the entry of the final summary judgment and remand for further proceedings consistent with this opinion. In so doing, we reach no conclusion regarding whether the parties to the deed conveyance intended to be bound by future amendments or whether they could contractually agree to do so.[1]

Reversed and remanded for further proceedings.

VILLANTI, C.J., and BLACK, J., Concur.

---

[1]We note that neither Greenbriar nor Angora reach a conclusion regarding whether parties to a contract can agree to future unilateral amendments to incorporated documents that are not statutory in nature.