NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT


DAVID L. HARKLESS,                          )
                                            )
          Appellant,                        )
                                            )
v.                                          )          Case No.  2D15-5385
                                            )
DAVID A. LAUBHAN and SUSAN W.               )
LAUBHAN,                                    )
                                            )
          Appellees.                        )
_____ )

Opinion filed December 21, 2016.

Appeal from the Circuit Court for DeSoto
County; Don T. Hall, Judge.

Glenn N. Siegel, of Glenn N. Siegel, P.A.,
Port Charlotte, for Appellant.

Warren R. Ross, of Wotitzky, Wotitzky, Ross
& McKinley, P.A., Punta Gorda, for
Appellees.


BADALAMENTI, Judge.

          David L. Harkless appeals the trial court's final summary judgment entered

in favor of David and Susan Laubhan.  The crux of this dispute is whether Mr. Harkless

reserved the right to receive rent from a parcel of land that he used to own and that the

Laubhans eventually came to own.

We reverse the grant of summary judgment.  Mr. Harkless reserved his right to receive rent in a sales contract with an intermediate purchaser.  That reservation did not merge into any subsequent deed.  Nevertheless, there remains a genuine issue of material fact as to whether the Laubhans were bona fide purchasers for value and without notice, rendering summary judgment inappropriate.  Our reversal extends to any relief the trial court provided to the Laubhans on their counterclaim.

## I.  STATEMENT OF FACTS & PROCEDURAL POSTURE

Mr. Harkless owned land in DeSoto County.  In 2008, he entered into a land lease agreement (the Lease) with Verizon Wireless.  Under the Lease, Mr. Harkless leased a 100- by 100-foot parcel of his land (the Parcel) to Verizon, along with an accompanying easement for Verizon to build a cell tower.  In return, Verizon agreed to pay Mr. Harkless $13,800 a year in rent.  Verizon did not commence construction of the tower until May 2012.

In 2011, Mr. Harkless sold ten acres of his land to Reed and Beth Lolly, who planned to operate a blueberry farm.  Those ten acres contained the Parcel.  Paragraph 18 of the sales contract between Mr. Harkless and the Lollys (the Harkless-Lolly contract) contains a handwritten addendum entitled "Additional Terms."  The addendum states, "The Easement for the said Verizon Cell Tower location is 115 ft x 115 ft in which the seller David L. Harkless shall continue and remain owner of said easement and Verizon cell tower lease."[1]  However, the subsequent warranty deed from

---

[1]In the Harkless-Lolly contract, the Parcel appears to incorporate an additional fifteen square feet from its original size because of negotiations Mr. Harkless had with a third party interested in purchasing his interest in the Parcel.

Mr. Harkless to the Lollys (April 2011 Deed) did not contain a similar provision specifically memorializing Mr. Harkless's right to receive rent.

Three months later, after deciding that market conditions for blueberries were unfavorable, the Lollys sold the ten acres to the Laubhans—retirees who owned a small ranch on adjoining land. The sales contract between the Lollys and the Laubhans (the Lolly-Laubhan contract) made no express mention of Mr. Harkless's remaining interest in the Parcel. Unlike paragraph 18 of the Harkless-Lolly contract, paragraph 18 of the Lolly-Laubhan contract provides, "Buyer is aware of Verizon tower lease and has received a copy of the survey and lease." The warranty deed from the Lollys to the Laubhans (the July 2011 Deed) contained no language addressing Mr. Harkless's right to receive rent under the Lease.

Both the April 2011 Deed and the July 2011 Deed stated that they were "subject to a (Verizon Wireless) Easement as described in Instrument #200814009062, DeSoto County, Florida." That instrument, entitled "Amended Memorandum of Lease Agreement," is essentially an abridged version of the Lease. The Amended Memorandum is silent as to Mr. Harkless retaining his right to receive rent.

Shortly before Verizon began construction of the tower in May 2012, Mr. Harkless gave Communications Capital Group, LLC, the option to purchase his interest in the Lease for $175,000. Communications Capital thereafter sent the Laubhans a letter asking them to sign and notarize documents which purported to memorialize Mr. Harkless's continued right to receive rent under the Lease. The Laubhans responded that they owned the Parcel free and clear of Mr. Harkless's right to receive rent. As a result of this claim, Communications Capital did not exercise its option.

Mr. Harkless then filed a two-count complaint against the Laubhans. He sought a declaratory judgment that he had the right to receive rent under the Lease. He also sought reformation of both the April 2011 Deed and July 2011 Deed to reflect this right. The Laubhans moved for summary judgment. They argued that the April 2011 Deed and the July 2011 Deed failed to expressly reserve Mr. Harkless's right to receive rent. Accordingly, the Laubhans maintained that the right to receive rent was presumptively conveyed from Mr. Harkless to the Lollys and ultimately from the Lollys to the Laubhans.

In support of their summary judgment motion, the Laubhans filed a Statement of Undisputed Facts. This Statement provides that "the language of the [two real estate sales] contracts was different in paragraph 18" and the Laubhans "were not aware before this litigation of the contractual agreement between Mr. Harkless and the Lollys by which the Lollys specifically agreed that Mr. Harkless was to receive the Verizon lease payments."

At the summary judgment hearing, the Laubhans contended that the only relevant documents for the trial court to consider were the April 2011 Deed, the July 2011 Deed, and the Amended Memorandum of Lease Agreement mentioned in both Deeds. Because none of those documents explicitly reserved Mr. Harkless's right to receive rent, the Laubhans maintained that Mr. Harkless necessarily conveyed that right away, along with the rest of his rights to the Parcel. The Laubhans asserted that the trial court should disregard any other documents which might indicate otherwise as inadmissible parol evidence. Seemingly, they acknowledge that the Harkless-Lolly contract reflected an intent that Mr. Harkless retain the right to receive rent under the

Lease. The Laubhans conceded that their theory of the case would result in an "unintended consequence" for Mr. Harkless and the Lollys. Seizing on this concession in opposing the motion, Mr. Harkless pointed to the deposition testimony of himself and the Lollys which reflected that every party to the April 2011 Deed understood that Mr. Harkless retained the right to receive rent. The Laubhans countered that intent was irrelevant because the intent was never "put in a document" recorded in the public records.

Ultimately, the trial court granted the Laubhans' motion for summary judgment.

## II. DISCUSSION

Mr. Harkless argues that the trial court improperly granted summary judgment in favor of the Laubhans. More specifically, he asserts that genuine issues of material fact exist as to whether he reserved his right to receive rent and whether the Laubhans were bona fide purchasers for value without notice. "If the record reflects the existence of any genuine issue of material fact . . . summary judgment is improper." Alderman v. BCI Eng'rs & Scientists, Inc., 68 So. 3d 396, 399 (Fla. 2d DCA 2011) (quoting Holland v. Verheul, 583 So. 2d 788, 789 (Fla. 2d DCA 1991)). Whether or not a party is a bona fide purchaser for value without notice is an issue of material fact which may prompt the reversal of a summary judgment. See McCoy v. Love, 382 So. 2d 647, 649 (Fla. 1979).

## A. Reservation of Mr. Harkless's Right to Receive Rent

We interpret contracts in accordance with their plain and ordinary meaning when the contractual language is clear and unambiguous. See Bioscience W., Inc. v.

Gulfstream Prop. & Cas. Ins. Co., 185 So. 3d 638, 640 (Fla. 2d DCA 2016).  Similarly, "[w]hen the language of a deed is clear and certain in meaning and the grantor's intention is reflected by the language employed, there is no room for judicial construction of the language nor interpretation of the words used."  Rogers v. United States, 184 So. 3d 1087, 1095 (Fla. 2015) (quoting Saltzman v. Ahern, 306 So. 2d 537, 539 (Fla. 1st DCA 1975)).

Neither the April 2011 Deed nor the July 2011 Deed contains language specifically reserving Mr. Harkless's right to receive rent pursuant to the Lease.  Yet, in their Statement of Undisputed Facts, the Laubhans concede that Mr. Harkless and the Lollys "specifically agreed that Harkless was to receive the Verizon lease payments." We likewise agree that the "Additional Terms" section of the Harkless-Lolly contract reserved Mr. Harkless's right to receive rent.  See Gray v. Callahan, 197 So. 396, 398-99 (Fla. 1940) ("The transferor of [a] reversion may . . . in the transfer expressly reserve the rent for part [or] all of the term granted by the lease . . . ." (quoting 16 Ruling Case Law, Landlord and Tenant § 128 (William M. McKinney & Burdett A. Rich eds., 1917))); 1 Herbert Thorndike Tiffany, The Law of Real Property and Other Interests in Land § 53(a) (1920) (explaining that, when a lessor uses language referring to the "transfer of a lease," they are ordinarily referring to transfer of the right to receive rent, as opposed to the transfer of some reversionary interest).

## B.  Extrinsic Evidence, Merger by Deed, and the Intent of the Parties

Because Mr. Harkless reserved his right to receive rent in the Harkless-Lolly contract, we must reckon with the Laubhans' arguments concerning ambiguity and merger by deed.  At the hearing on their summary judgment motion, the Laubhans

- 6 -

asserted that even if Mr. Harkless reserved his right to receive rent in the Harkless-Lolly contract, that right merged into the April 2011 Deed without specific reservation and was then conveyed to the Laubhans in the July 2011 Deed.  Accordingly, the Laubhans believe that the Harkless-Lolly contract is inadmissible parol evidence and cannot be used to construe the otherwise unambiguous language of conveyance in the April 2011 Deed and July 2011 Deed.

It is axiomatic that preliminary agreements concerning the sale of property merge into the deed executed pursuant to the sale.  Morton v. Attorneys' Title Ins. Fund, Inc., 32 So. 3d 68, 72 n.3 (Fla. 2d DCA 2009) (quoting Engle Homes, Inc. v. Jones, 870 So. 2d 908, 910 (Fla. 4th DCA 2004)).  This axiom encompasses real estate sales contracts.  See Stephan v. Brown, 233 So. 2d 140, 141 (Fla. 2d DCA 1970).

The doctrine of merger by deed, however, is an extension of the general principle of integration in written contracts.  Whether discussing merger into a deed or integration of a prior agreement into a subsequent contract, our guiding principle is the intent of the parties.  See Jenkins v. Eckerd Corp., 913 So. 2d 43, 53 (Fla. 1st DCA 2005) ("The concept of integration is based on a presumption that the parties to a written contract intended that writing 'to be the sole expositor of their agreement.' " (quoting Everglade Lumber Co. v. Nettleton Lumber Co., 149 So. 736, 738 (Fla. 1933))).  If it is undisputed that none of the parties to a real estate transaction intended for certain provisions of their real estate sales contract to merge into a subsequent deed, then no merger takes place as to those provisions.  See Milu, Inc. v. Duke, 204 So. 2d 31, 33 (Fla. 3d DCA 1967) ("The rule that acceptance of a deed tendered in performance of a contract to convey land merges or extinguishes the covenants and stipulations

contained in the contract does not apply to those provisions of the antecedent contract which the parties do not intend to be incorporated in the deed . . . .").

Although the April 2011 Deed does not expressly reserve Mr. Harkless's right to receive rent, all of the parties to that deed—Mr. Harkless and the Lollys—patently testified in their depositions that they intended for Mr. Harkless to retain the right to receive rent under the Lease and that they understood paragraph 18 of the Harkless-Lolly sales contract to effectuate this retention. Moreover, the Laubhans stipulated to the same construction of paragraph 18 in their Statement of Undisputed Facts. Because all parties to the Harkless-Lolly sales contract agree that paragraph 18 was intended to reserve Mr. Harkless's right to receive rent, that right did not merge into the April 2011 Deed as a matter of law. And because Mr. Harkless and the Lollys do not dispute that paragraph 18 never merged into the April 2011 Deed, it is irrelevant whether or not the April 2011 Deed is unambiguous on its face. See Milu, Inc., 204 So. 2d at 33; see also Providence Square Ass'n v. Biancardi, 507 So. 2d 1366, 1371 (Fla. 1987) ("In a reformation action in equity . . . parol evidence is admissible for the purpose of demonstrating that the true intent of the parties was something other than that expressed in the written instrument.").

## C.  The Phrase "Subject to" in the April 2011 and July 2011 Deeds

We recognize there are some judicial opinions in Florida which could be read to suggest that, if a deed contains the phrase "subject to," then the deed could be rendered generally ambiguous. See, e.g., Hastie v. Ekholm, 199 So. 3d 461, 464 (Fla. 4th DCA 2016) (holding that phrase "subject to" created an ambiguity in deeds to separate lots which were once under common ownership, where some of the deeds

said they were "subject to an easement," and others said they were "subject to a right of way for ingress and egress"); Cook v. Tradewinds W. Condo., Inc., 636 So. 2d 591, 593 (Fla. 3d DCA 1994) (holding that the phrase "subject to" created an ambiguity in a deed, where (1) the right to receive rent under a preexisting lease had been severed from the deeded land for ten years, and (2) plaintiffs were aware of the preexisting lease and owned the land for six years before bringing suit).

The origin of this case law is Procacci v. Zacco, 324 So. 2d 180, 181 (Fla. 4th DCA 1975), wherein a probate estate deeded a parcel of land to an heir and an adjacent parcel of land to a petroleum company. The deed to the petroleum company stated that the company's land was "subject to" a right-of-way easement. Id. at 182. When the petroleum company began constructing buildings which interfered with the easement, the heir filed for an injunction. Id. The trial court held that the phrase "subject to" was insufficient to reserve any easement whatsoever and the Fourth District agreed. Id. In explaining its affirmance, the Fourth District opined that the phrase "subject to" was so ambiguous that, as a standalone legal incantation, it was insufficient to create any easement. Id. at 181-82. But the Fourth District also noted that the estate later quitclaimed all of its interest to the petroleum company and that the heir's deed did not contain any mention of an easement. Id. at 182.

The case before us is distinguishable from Procacci, and from cases which rely on Procacci, such as Hastie and Cook. First, the right to receive rent is distinct from an easement. Compare Penthouse N. Ass'n v. Lombardi, 461 So. 2d 1350, 1352 (Fla. 1984) (describing rent as a contingent obligation to pay by a lessee "which becomes an enforceable debt only as the rent is earned through the lessee's use

- 9 -

of the property" (citing De Vore v. Lee, 30 So. 2d 924, 926 (Fla. 1947))), with Sears, Roebuck & Co. v. Franchise Fin. Corp. of Am., 711 So. 2d 1189, 1191 (Fla. 2d DCA 1998) ("An easement is an incorporeal, nonpossessory interest in land which concerns the use of the land of another."). Unlike Procacci or Hastie, the case before us does not concern two plots of land which were once under common ownership and now contain different language concerning easements in their respective deeds. Thus, even if the "subject to" language in the April 2011 and July 2011 Deeds contains some ambiguity as to Verizon's easement, it is inconsequential here because the right at issue is not an easement.

Second, the rule expressed in Procacci derives from the broader notion that the phrase "subject to," when paired with language describing an interest in real property, can only denote a preexisting interest, not create a new one. See Star Island Assocs. v. City of St. Petersburg Beach, 433 So. 2d 998, 1004 (Fla. 2d DCA 1983) (applying the rule in Procacci, where the deeds at issue were "subject to" an easement but did "not refer to any prior instrument purporting to create such an easement, nor do the deeds identify the location of the easement"); see also Wild River Adventures, Inc. v. Bd. of Trustees of Sch. Dist. No. 8, 812 P.2d 344, 347 (Mont. 1991) (explaining the words "subject to" do not create an easement, and that the purpose of such language is to exclude preexisting easements from warranties of title). But if the phrase "subject to" refers to another instrument which does create a property interest, then there is no ambiguity. Star Island Assocs., 433 So. 2d at 1002 ("The deeds do not refer to any prior instrument purporting to create such an easement, nor do the deeds identify the location of the easement.").

Here, the Amended Memorandum of Lease Agreement contains no ambiguities concerning Verizon's easement and no indications that Mr. Harkless intended to reserve his right to receive rent. On the contrary, paragraph 5 of the Amended Memorandum indicates that the Lease's terms "shall extend to and be binding upon the respective executors, administrators, heirs, successors and assigns of the Lessor and Lessee." In other words, the Lease restates the default rule that the right to receive rent, like other real property rights, is presumptively transferred in a deed unless it is specifically reserved. See Gray, 197 So. at 399. Therefore, the "subject to" rule in Procacci cannot apply to the case before us.

To the extent that the Third District's holding in Cook may stand for a different proposition, we disagree. 636 So. 2d at 592. The deed in Cook stated that it was "subject to" a recorded ninety-nine-year lease, so there was no ambiguity as to whether the words "subject to" created a new right or reserved a preexisting right. The plaintiffs in Cook acquired rights to the deeded property eleven years after the execution of the lease, after it had already changed ownership many times. Id. at 592. The Cook court failed to analyze whether there was any ambiguity in the recorded deed. But in any event, the plaintiffs in Cook were aware of the existence of the lease and had been in possession of the subject property for six years before they ever sued for rent. Id. at 593. Moreover, none of the parties who owned the deeded land before the Cook plaintiffs ever challenged the original lessees' reservation of rent. Id. Based on those facts, the Cook plaintiffs were likely aware of some preexisting, nonintegrated agreement to reserve rent to the original lessees. Therefore, the holding of the Cook court was correct, but the reasoning was flawed.

- 11 -

Third, it would be imprudent to extend the holding of <u>Procacci</u> to cases where a deed states that it is subject to a specific recorded instrument and that instrument does not add any ambiguity to the face of the deed. The terms that Mr. Harkless and the Lollys agreed to in paragraph 18 of the Harkless-Lolly contract are not evident on the face of the April 2011 Deed, the July 2011 Deed, or the Amended Memorandum of Lease Agreement. If we extended the holding of <u>Procacci</u> to mean that the words "subject to" in the April 2011 and July 2011 Deeds render paragraph 18 of the Harkless-Lolly contract admissible as parol evidence, it follows that any deed containing the words "subject to" could be challenged as facially ambiguous, and may be supplemented by documents which are totally unrelated to whatever the deeds are "subject to." Such a result would not square with supreme court precedent. <u>See</u> <u>Gray</u>, 197 So. at 399 (holding that a deed which "contained no reservation of rents accruing thereafter . . . amounted to relinquishment" of the original lessor's rights to receive rent).

Therefore, we decline to adopt this line of argument. However, as we already explained above, we need not reach the issue of ambiguity to reverse the trial court's summary judgment because the April 2011 Deed was not fully integrated with respect to Mr. Harkless's right to receive rent.

**D. Application of Florida's Recording Statute to the Right to Receive Rent**

Having elucidated our limited ground for reversal, we must now analyze the impact that the subsequent Lolly-Laubhan transaction had on Mr. Harkless's right to receive rent. Clearly, paragraph 18 of the Lolly-Laubhan contract does not contain the same language as paragraph 18 of the Harkless-Lolly contract. It is also clear that the July 2011 Deed, like the April 2011 Deed, is silent as to Mr. Harkless's reservation of his

right to receive rent. Consequently, the Laubhans contend that they had no way of knowing the terms of the Harkless-Lolly contract and thus no way of knowing that the Lollys were not giving them the full bundle of rights associated with ownership of the Parcel. The Laubhans' concerns are legitimate, but they do not warrant summary judgment. Rather, the trial court should have assessed whether genuine issues of material fact exist as to the Laubhans' status as bona fide purchasers for value and without notice. See McCoy, 382 So. 2d at 649.

The basis for the bona-fide-purchaser rule has been prescribed by the Florida Legislature. Neither party identifies, nor have we found, any case law holding that the right to receive rent is subject to Florida's recording statute. However, the plain language of Florida's recording statute states that "[n]o conveyance . . . of real property, or of any interest therein . . . shall be good and effectual in law or equity against . . . subsequent purchasers for valuable consideration and without notice, unless the same be recorded according to law." § 695.01(1), Fla. Stat. (2011) (emphasis added). The right to receive rent is an incorporeal hereditament—an intangible interest in real property. See Fla. Power Corp. v. McNeely, 125 So. 2d 311, 315 (Fla. 2d DCA 1960) (quoting Restatement (First) of Property § 9 cmt. b (Am. Law Inst. 1936)); 52A C.J.S. Landlord & Tenant § 1078, Westlaw (database updated September 2016) (citing McBryde v. Lowe, 163 So. 2d 896, 899 (Fla. 2d DCA 1964) (Shannon, J., dissenting)). Accordingly, the right to receive rent is covered by section 695.01(1).[2]

---

[2]Courts in other states have similarly found that the right to receive rent is contemplated by their recording statutes. See, e.g., Valley Nat'l Bank of Ariz. v. Avco Dev. Co., 480 P.2d 671, 672-75 (Ariz. Ct. App. 1971); Winnisimmet Tr. v. Libby, 122 N.E. 575, 576 (Mass. 1919); John McMenamy Inv. & Real Estate Co. v. Dawley, 165 S.W. 829, 830 (Mo. Ct. App. 1914); First & Citizens Nat'l Bank of Elizabeth City v.

The record reflects that genuine issues of material fact remain as to whether the Laubhans purchased the Parcel as bona fide purchasers for value without notice under Florida's recording statute. The Lollys both testified that they told their realtor, Margaret Williamson, to inform the Laubhans that their property was subject to Mr. Harkless's right to receive rent. Ms. Williamson, who was the realtor for both of the transactions involved in this case, testified that she informed the Laubhans that Mr. Harkless was "keeping the lease agreement." The Laubhans testified that the conversation they had with Ms. Williamson was more ambiguous. Mr. Laubhan testified that he asked Ms. Williamson how Mr. Harkless could reserve his right to receive rent and the response he received from Ms. Williamson was, "I don't know, I don't do leases." During her deposition, Ms. Williamson indicated that she did not know where or how Mr. Harkless reserved his right to receive rent—only that he had done so and that she was instructed to relay that message to the Laubhans. The Laubhans also indicated that they initially believed the cellular communications tower would never be built due to the expiration of a special zoning exception afforded by the DeSoto County Board of County Commissioners (BOCC) to Mr. Harkless. In the same vein, Mr. Harkless testified that the Laubhans had no problem with the state of affairs until construction on the tower actually began. During the hearing on the Laubhans' motion for summary judgment, Mr. Harkless indicated that Mrs. Laubhan attended meetings of the BOCC and was well-informed about Mr. Harkless's dealings with Verizon.

---

Sawyer, 10 S.E.2d 656, 657 (N.C. 1940); Schmid v. Baum's Home of Flowers, Inc., 37 S.W.2d 105, 109 (Tenn. 1931).

Such matters present unresolved factual issues that the finder of fact must resolve. Accordingly, summary judgment was not the appropriate vehicle by which to dispose of this case in the trial court.

### III. CONCLUSION

We reverse the trial court's grant of summary judgment to the Laubhans and remand for proceedings consistent with this opinion. Mr. Harkless reserved his right to receive rent in the Harkless-Lolly contract, which did not merge into any subsequent deed. Genuine issues of material fact remain as to whether the Laubhans were bona fide purchasers for value and without notice. Our reversal also extends to any relief the trial court afforded to the Laubhans on their counterclaim. We express no opinion on the merits of reformation as to one or both of the Deeds in this case.

Reversed; remanded for further proceedings.


LaROSE, J., Concurs.
BLACK, J., Concurs in result only with opinion.

BLACK, Judge, concurring with opinion.

In my opinion, the majority makes findings of fact and reaches conclusions of law that exceed the scope of our review of a final summary judgment inappropriately granted. I would reverse and remand for further proceedings, concluding only that the intent of the parties was an issue of material fact in dispute which precluded summary judgment. See Fiore v. Hilliker, 170 So. 3d 147, 151 (Fla. 2d DCA 2015) (reversing summary judgment where the intent of the parties was a disputed material fact which was to be considered by the trier of fact below); Hervey v. Alfonso, 650 So. 2d 644, 646 (Fla. 2d DCA 1995) ("[A] motion for summary judgment is not a substitute for a trial on the merits. Hence, a trial court is precluded from resolving disputed issues of fact when considering such a motion. Thus, when a defendant moves for summary judgment, neither the trial court nor this court determines whether the plaintiff can prove the cause of action alleged. The function of the court is solely to determine whether the appropriate record presented in support of summary judgment conclusively shows that the plaintiff cannot prove the claim alleged as a matter of law." (citation omitted)).

The trial court granted summary judgment in favor of the Laubhans but made no express findings of fact or conclusions of law. Upon review of the hearing transcript and the arguments made, and in the absence of findings by the trial court, it appears that the only basis upon which the trial court could grant summary judgment in favor of the Laubhans was the determination that the deeds and Lease Agreement, the subjects of Mr. Harkless's complaint, unambiguously did not reserve Mr. Harkless's right to rent under the Lease—the argument raised by the Laubhans at the hearing. In opposition to the Laubhans' motion and arguments, Mr. Harkless contended that the

"subject to" language in the deeds rendered them ambiguous and that in order to resolve that ambiguity, the trial court was required to consider the language of the Harkless-Lolly contract and the intent of the parties—extrinsic evidence.

"[A] trial court may not weigh the evidence or judge the credibility of witnesses in arriving at summary judgment; instead, the moving party must conclusively show the absence of any genuine issues of material fact." Plantation Key Office Park, LLLP v. Pass Intern., Inc., 110 So. 3d 505, 508 (Fla. 4th DCA 2013) (citing Craven v. TRG–Boynton Beach, Ltd., 925 So. 2d 476, 480-81 (Fla. 4th DCA 2006)). "A summary judgment motion will be defeated if the evidence by affidavit or otherwise demonstrates the existence of a material factual issue." Harvey Bldg., Inc. v. Haley, 175 So. 2d 780, 782 (Fla. 1965).

Florida law holds that "[t]he words 'subject to' in a deed or contract generally create an ambiguous deed or contract." Hastie v. Ekholm, 199 So. 3d 461, 464 (Fla. 4th DCA 2016) (citing Procacci v. Zacco, 324 So. 2d 180, 182 (Fla. 4th DCA 1975)); see also Cook v. Tradewinds W. Condo., Inc., 636 So. 2d 591, 592 (Fla. 3d DCA 1994). As applied in this case, if the trial court were inclined to accept the Laubhans' argument that no material issues of fact were in dispute based on the language of the deed, Mr. Harkless sufficiently "demonstrate[d] the existence of such an issue either by countervailing facts or justifiable inferences from the facts presented" through the deposition testimony and evidence on record. See Harvey Bldg., 175 So. 2d at 783. As a result, summary judgment was inappropriate. See Mac-Gray Servs., Inc. v. Savannah Assocs. of Sarasota, LLC, 915 So. 2d 657, 659-60 (Fla. 2d DCA 2005) ("[W]hen an agreement contains a latent ambiguity . . . the issue of the correct

interpretation of the agreement is an issue of fact which precludes summary judgment." (quoting Griffin v. Fed. Deposit Ins. Corp., 532 So. 2d 1358, 1360 (Fla. 2d DCA 1988)).

Because on the record before us there is no way to conclusively determine on what basis the trial court granted summary judgment, I would apply the general rule that where a contract or writing is ambiguous, "the parties' intent becomes a question of fact for the fact-finder, precluding summary judgment," rather than the exception that "a contract may be interpreted as a matter of law when the ambiguity can be resolved by undisputed parol evidence of the parties' intent." Life Care Ponte Vedra, Inc. v. H.K. Wu, 162 So. 3d 188, 191–92 (Fla. 5th DCA 2015); see also Centennial Mortg., Inc. v. SG/SC, Ltd., 772 So. 2d 564, 566 (Fla. 1st DCA 2000) ("Contract interpretation is for the court as a matter of law, rather than the trier of fact, only when the agreement is totally unambiguous, or when any ambiguity may be resolved by applying the rules of construction to situations in which the parol evidence of the parties' intentions is undisputed or non-existent." (quoting Land O'Sun Realty Ltd. v. REWJB Gas Inv., 685 So. 2d 870, 872 n.3 (Fla. 3d DCA 1996), review dismissed sub nom. Lennar Fla. Partners, I v. REWJB Gas Inv., 710 So. 2d 978 (Fla. 1998))).